NILSSON, ROBBINS, DALGARN, BERLINER, CARSON & WURST, Plaintiff-Appellee,

v.

LOUISIANA HYDROLEC; John W. Marmoulides, Defendants,

and

Samuel W. Ethridge; Aqualec, Inc., Defendants-Appellants.

NILSSON, ROBBINS, DALGARN, BERLINER, CARSON & WURST, Plaintiff-Counterclaim-Defendant, Appellee,

v.

AQUALEC, INC., Defendant-Counter-Claimant-Appellant,

v.

Samuel W. ETHRIDGE, Defendant-Cross-Defendant-Appellant.

Nos. 86-5592, 86-6424.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 6, 1987.

Decided Aug. 23, 1988.

**1540**

Samuel W. Ethridge, Kenner, La., for defendants-appellants.

Leonard D. Messinger, Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst, Los Angeles, Cal., for plaintiff-appellee.

Richard L. Grimwade, Steven M. Cischke, Barton, Klugman & Oetting, Los Angeles, Cal., for cross-defendant-appellee.

Before SCHROEDER * and NELSON, Circuit Judges, and KAY.** District Judge.

PER CURIAM:

This case consists of two appeals arising from a civil action initiated by Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst ("Nilsson" or "plaintiff") in the United States District Court for the Central District of California, against defendants Samuel W. Ethridge ("Ethridge"), a citizen of, and attorney practicing in Louisiana; Aqualec, Inc., a Louisiana corporation; and Louisiana Hydrolec and John W. Marmoulides, Louisiana citizens (Ethridge and Aqualec, Inc., appellants herein, are collectively referred to as "defendants").

## BACKGROUND

Plaintiff in the action below is a law firm that performed various legal services for defendants, a corporate entity and its president, between June of 1979 and August of 1981. The legal services were rendered in connection with a lawsuit for patent infringement that was brought by defendants against a party who is not involved in the instant appeal. Pursuant to its usual billing policy, the plaintiff law firm sent monthly statements to defendants.

This action was brought as a result of the nonpayment of the principal sum of $41,119.58 for plaintiff's legal services.

In January of 1982, plaintiff sent the defendants a "Notice of Client's Right to Arbitrate" as required by California law. This notice advised defendants of their outstanding balance for legal services, requested immediate payment, and advised

---

* Judge Anderson was drawn to replace Judge (now Justice) Kennedy. Upon Judge Anderson's death, Judge Schroeder was drawn to replace him. Judge Schroeder has read the briefs and reviewed the record.

** The Honorable Alan C. Kay, United States District Judge, District of Hawaii, sitting by designation.

defendants that if they disputed the bill, they had a right to arbitrate under California law. The defendants never responded to this notice.

Plaintiff thereafter, in March of 1983, filed a complaint in federal court seeking its fees. Plaintiff sought recovery on the basis of quantum meruit and open book account against all defendants, and on the basis of account stated, breach of contract, and fraud against Ethridge and Aqualec.

Defendants failed to answer the complaint. Consequently, a default judgment was entered against them. When they moved to vacate the default, the motion was denied because of failure to comply with local rules requiring sworn evidence of a meritorious defense. Upon resubmission of the motion, the default was vacated with the conditions that defendants pay to plaintiff the reasonable value of plaintiff's attorneys' fees and costs incurred in opposing the motion and resubmission of the motion to set aside entry of default, and that defendants promptly and completely respond to all discovery and fully obey the Federal Rules of Civil Procedure and the court's Local Rules in further proceedings in this case. In March of 1984, plaintiff filed an amended complaint and defendants again failed to answer. Once again, a default judgment was entered. This judgment was also followed by a motion to vacate the default, which was denied because of failure to provide verified answers. The default was later vacated upon resubmission of the motion. Similar conditions for vacating the default were imposed.

In June of 1984, plaintiff moved for partial summary judgment. The motion was based on the "account stated" cause of action and also sought a piercing of the corporate veil to hold Ethridge personally liable for Aqualec's corporate debts. Plaintiff's motion complied with all pertinent local rules and the Federal Rules of Civil Procedure. Defendants' memorandum in opposition to the motion for summary judgment, however, was deficient since it contained only argument and did not contain any evidentiary material. Because of the second default of the defendants, the hearing on the motion for partial summary judgment was continued from June 26, 1984 until April 24, 1985. One week prior to that hearing, the trial judge advised defendants that their opposition was inadequately supported and that on the basis of the memoranda in support of and in opposition to the motion for partial summary judgment, she planned to grant the motion. When defendants stated that they had not received this ruling, the hearing on the motion was continued for another week. During this week, defendants failed to buttress their argument against the entry of summary judgment with any evidentiary materials, even though they had been advised that their failure to do so had inclined the district court judge to grant the motion for partial summary judgment. Accordingly, the district court judge granted the motion based upon plaintiff's memoranda and supporting evidence. Defendants appeal from the grant of partial summary judgment.

Throughout the proceedings, defendants repeatedly refused to conform to the Local Rules and the Federal Rules of Civil Procedure. Defaults, orders to compel defendants to comply with discovery rules and prior court orders, and monetary sanctions did not alleviate this behavior. After considering the parties' arguments regarding plaintiff's motion to compel production and for sanctions, Magistrate Brown ultimately found that Ethridge and Aqualec were guilty of willfully disregarding their discovery obligations and court orders, and that this virtually demanded sanctions under Rule 37. The magistrate also found that Ethridge had violated local discovery rules by his refusal to provide his portion of the discovery motion, and recommended the striking of all of Aqualec's pleadings and entry of judgment for Nilsson, as sanctions to be imposed on Aqualec and Ethridge. Defendants never objected to nor sought reconsideration or review of the magistrate's ruling as required by the Local Rules.

In her December 31, 1985 order, Judge Rymer adopted the magistrate's findings and conclusions. After lifting three entries

**1542**

of default against the defendants, imposing four orders for monetary sanctions against Ethridge for failure to comply with discovery requests and court orders, and holding numerous hearings on motions to compel, defendants' failure to comply with the May 1, 1985 court order, which required defendants to submit fully responsive answers and to identify documents requested, led the district court judge to conclude that sanctions were warranted under Fed.R. Civ.P. 37(b)(2)(C). Accordingly, the court ordered Aqualec's Second Amended Counterclaim dismissed with prejudice, and entered default judgment for Nilsson on its First Amended Complaint. Defendants also appeal from this order.

## DISCUSSION

### A. *Partial Summary Judgment*

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact [citations omitted], the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment." *T.W. Electrical Service v. Pacific Electrical Contractors Association,* 809 F.2d 626, 630 (9th Cir.1987). Instead, Rule 56(e) requires that the nonmoving party set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial. *Id.* At least some "significant probative evidence tending to support the complaint" must be produced. *Id.* [citations omitted].

We review the district court's grant of summary judgment *de novo. Richards v. Neilsen Freight Lines,* 810 F.2d 898, 902 (9th Cir.1987). The record made on summary judgment controls, not that record plus speculative inferences a trier of fact

might add. *Id.* Viewing the evidence in the light most favorable to the nonmoving party, we must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Ashton v. Cory,* 780 F.2d 816, 818 (9th Cir.1986).

We must first determine whether plaintiff adequately supported its motion for summary judgment. To answer this, we must consider two claims: first, whether a claim for account stated had been made by the plaintiff; second, whether on the basis of the evidence presented, Ethridge could be held individually liable for the debts of Aqualec, Inc.

### 1. Account Stated

Through the declarations of Mr. Dalgarn, an attorney in the plaintiff law firm, and of Ms. Rinen, the bookkeeper for the firm, plaintiff established that at the initiation of the representation, defendants were informed that they would receive monthly statements; defendants agreed to pay promptly for legal services, and did in fact receive monthly bills; defendants paid for services prior to August of 1980 without complaining about the amount; that as a result of failure to pay for legal services, plaintiff terminated its representation of defendants; that plaintiff sent a certified letter to defendants demanding payment of the outstanding balance, and that the return of service was signed by Ethridge's wife; that defendants never responded to the letter; and that as of April 23, 1982, defendants owed $41,119.58 for legal services. Plaintiff also cited to excerpts of Ethridge's deposition. The referenced excerpts established that defendants periodically received billing statements from plaintiff, and that, although unhappy about the format of the bills, defendants never had an intent not to pay the bills.

In an action for account stated that also arose from a client's failure to pay his attorney's legal fees, a California court held that

[a]n account stated is an agreement, based on the prior transactions between

the parties, that the items of the account are true and that the balance struck is due and owing from one party to another.... When the account is assented to, "it becomes a new contract. An action on it is not founded upon the original items, but upon the balance agreed to by the parties...."

*Gleason v. Klamer,* 103 Cal.App.3d 782, 163 Cal.Rptr. 483, 485 (1980) (citations omitted). In applying California law, we have held that "[t]he existence of an account stated need not be express and frequently is implied from the circumstances. For example, where a creditor renders a statement and the debtor fails to object within a reasonable time, the open account may be superseded by an account stated." *Davis & Cox v. Summa Corp.,* 751 F.2d 1507, 1515 (9th Cir.1985). Where, however, the subject account is for legal services, there is a presumption of undue influence when entered between an attorney and client during their fiduciary relationship. The attorney has the burden of showing that the transaction was fair and regular and entered voluntarily by the client with full knowledge of the facts. *Gleason,* 163 Cal.Rptr. at 485–86. This presumption of undue influence, however, is inapplicable if the record establishes that the fiduciary relationship had terminated at the time of the account stated. *Id.* at 486.

Defendants were informed of their mounting legal bill, they paid for services and did not dispute the amount up until August of 1980, they failed to respond to the demand letter, and the account stated was made after the attorney-client relationship had terminated. We find that there was sufficient evidence to warrant the district court's ruling that plaintiff had sufficiently carried its burden under Fed.R. Civ.P. 56(c) in showing that there was no genuine issue of material fact as to the claim for account stated.

2. Individual Liability for Corporate Debt

█ The legal services were performed for Aqualec, Inc. Plaintiff, however, argued below that Ethridge was the alter ego of Aqualec and could be held individually liable for Aqualec's debts. In discussing the doctrine of alter ego, the California Supreme Court has held that

[t]here is no litmus test to determine when the corporate veil will be pierced; rather the result will depend on the circumstances of each particular case. There are, nevertheless, two general requirements: "(1) that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow."

*Mesler v. Bragg Management Co.,* 39 Cal. 3d 290, 702 P.2d 601, 606, 216 Cal.Rptr. 443, 448 (1985).

In its reply memorandum in support of its motion for summary judgment, plaintiff cited excerpts of Ethridge's deposition supporting the allegation that the corporate veil should be pierced. The requisite unity of interest and ownership in Ethridge's exertion of control over Aqualec is evidenced by several facts. Ethridge had absolute authority to act on Aqualec's behalf and was one of five members of Aqualec's board of directors. Ethridge owned twenty percent of the corporation's stock and his wife owned ten percent. In addition, Ethridge does not receive any compensation for his services as president of the corporation. The undercapitalization of the corporation is easily illustrated. Aqualec has no assets and most of its capitalization came from Ethridge. Further evidence that Ethridge should be held individually liable for Aqualec's debt is that Ethridge personally guaranteed a loan extended to the corporation which was used partially to pay for the litigation expenses of the original lawsuit, that Ethridge is now being sued for collection of the loans he personally guaranteed, and that until recently, Ethridge was paying the interest on the Aqualec loan personally. Moreover, there is no written agreement with respect to the monies expended by Ethridge with respect to the loan executed between Ethridge and Aqualec. Additionally, the checks made out to plaintiff

for payment of legal services were drawn on Ethridge's personal account.

The unity of interest required under California law does not require a demonstration of complete ownership. California considers a host of factors relevant to finding a unity of interest. *See Associated Vendors, Inc. v. Oakland Meat Co.,* 210 Cal.App.2d 825, 832–34, 26 Cal.Rptr. 806, 813–15 (1962). One highly relevant factor in determining a unity of interest is undercapitalization. *Id.* at 833, 26 Cal.Rptr. at 814. In fact, the California Supreme Court has held that undercapitalization alone will justify piercing the corporate veil. *See Minton v. Cavaney,* 56 Cal.2d 576, 364 P.2d 473, 15 Cal.Rptr. 641 (1961). In this case, Aqualec's undercapitalization is clear. In addition, Ethridge failed to treat Aqualec as a separate entity. He guaranteed loans for the corporation, and paid some of its bills from his own bank account. These facts, together with his control over the activities of the corporation, are more than enough evidence to support a finding of a unity of interests.

Based upon the foregoing, sufficient evidence exists to warrant a finding that there is no genuine issue of material fact as to whether there is such a unity of interest and ownership that the separate personalities of the individual and the corporation no longer exist.

If Ethridge were allowed to escape liability for his actions, an inequitable result would follow. Thus, both prongs of the test for alter ego were satisfied. *See United States v. Healthwin–Midtown Convalescent Hospital and Rehabilitation Center Inc.,* 511 F.Supp. 416, 420 (C.D.Cal. 1981), *aff'd,* 685 F.2d 448 (9th Cir.1982). Accordingly, we find that plaintiff sufficiently met its burden under Fed.R.Civ.P. 56(c) as to the alter ego theory.

■ In addition to arguing that plaintiff did not meet its burden under Rule 56(c), defendants argue that the trial judge should have searched and considered the verified pleadings, affidavits, declarations, depositions, answers to interrogatories, and admissions on file in resolving the motion for summary judgment. A party opposing summary judgment has its burden expressly spelled out in Fed.R.Civ.P. 56(e) which provides, in pertinent part, that

> [w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Most recently, the proposition that a non-moving party may not rely on its pleadings to defeat an appropriately supported summary judgment motion was stated by the United States Supreme Court in *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In *Celotex,* the Supreme Court reaffirmed the basic proposition that "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. at 2553. Once the initial responsibility has been met, the burden shifts to the nonmoving party to oppose the motion by showing specific facts, pursuant to Fed.R.Civ.P. 56(e), which establish a genuine issue for trial. As clearly stated in the *Celotex* opinion, "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves...." *Id.* at 324, 106 S.Ct. at 2554.

Similarly, in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed. 2d 202 (1986), the Supreme Court again noted that "Rule 56(e) provi[des] that a party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue

for trial.' " *Id.* at 248, 106 S.Ct. at 2510 (citation omitted).

Thus, defendants' argument that the Second Amended Counterclaim should have been considered by the trial judge as evidence of the existence of a genuine issue of material fact is deficient as a matter of law. Recent Supreme Court decisions firmly establish that pleadings are insufficient when an opposing party must carry its burden under Rule 56(e). In the absence of specific facts, as opposed to allegations, showing the existence of a genuine issue for trial, a properly supported summary judgment motion should be granted.

The defendants against whom summary judgment was entered made no showing of specific facts in their opposition to the summary judgment. Indeed, despite the fact that the movant's reply memorandum indicated that defendants had failed to properly support their opposition, despite a local rule requiring the opposing party to list all issues of material fact along with references to the record supporting the existence of those facts, and despite a tentative ruling by the trial judge expressly indicating that defendants' opposition to the summary judgment motion was insufficient, defendants did not show, with specific facts, the existence of a genuine issue for trial. At best, the conclusory nature of defendants' pleadings merely framed the ultimate issues of the lawsuit and did not establish the existence of genuine fact issues. *Radobenko v. Automated Equipment Corp.*, 520 F.2d 540, 543 (9th Cir.1975).

This issue has been addressed by the First Circuit in *Stepanischen v. Merchants Despatch Transportation Corp.*, 722 F.2d 922 (1st Cir.1983). The First Circuit found that a trial judge had a duty to sift through depositions to determine whether there was a genuine issue for trial, even in the absence of the nonmoving party's reference to pertinent deposition excerpts. However, the court noted that the trial judge could be, and indeed should be, limited by the promulgation of a local rule. *Id.* at 931.

Plaintiff's brief correctly asserts that the Central District of California, the district of origin for this case, has such a local rule. Local Rule 7.14.3 states that "[i]n determining any motion for summary judgment, the Court will assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Issues' and (b) controverted by declaration or other written evidence filed in opposition to the motion." Plaintiff argues that this rule put defendants on notice that they were not to assume that the court would search through a voluminous record in the hope of locating and identifying facts that might dispute plaintiff's specific factual showing. We agree. We hold that when a local rule such as United States District Court—Central District of California Rule 7.14.3 has been promulgated, it serves as adequate notice to nonmoving parties that if a genuine issue exists for trial, they must identify that issue and support it with evidentiary materials, without the assistance of the district court judge.

In this case, defendants were put on notice by plaintiff, eleven months before the summary judgment motion was ruled upon, that its memorandum in opposition to the motion for summary judgment was legally insufficient because of the lack of evidentiary support. The trial judge, in her tentative ruling, highlighted for defendants the flaws in their opposition. Moreover, a pertinent local rule expressly indicated that the defendants had an affirmative burden to list genuine issues with appropriate record citations in order to withstand the motion for summary judgment. Defendants, in the face of all these warnings that summary judgment would be granted unless they adequately supported their opposition to the plaintiff's motion, neglected to cite the court to a single evidentiary fact. Accordingly, we hold that summary judgment was appropriate and affirm the district court.[1]

---

1. In the absence of such a local rule, we do not determine whether the district judge has an independent duty to search and sift the factual

### B. *Imposition of Sanctions* [2]

Imposition of sanctions under Rule 37 is reviewed for an abuse of discretion and absent a definite and firm conviction that the district court made a clear error of judgment, we will not reverse. *United States v. National Medical Enterprises, Inc.*, 792 F.2d 906, 910 (9th Cir.1986).

Rule 37 sanctions are subject to certain limitations in that they must be just, and they must specifically be related to the particular claim that was at issue in the order to provide discovery. *Id.* (citations omitted). A sanction is "just" if the trial court considered the relevant factors and if the severity of the sanction is warranted by the conduct involved. *Id.*

### 1. Default Judgment

 Default was entered against defendants and later set aside several times by the district court. As a condition for setting aside these defaults, the district court ordered payment of plaintiff's attorneys' fees and required that defendants completely and promptly respond to all discovery and obey the federal and local rules.

In *Hawaii Carpenters' Trust Funds v. Stone*, 794 F.2d 508, 512 (9th Cir.1986), we observed that this circuit has not ruled whether a district court has authority to condition the setting aside of a default upon payment of attorneys' fees and costs under Fed.R.Civ.P. 55(c). We did not need to reach the issue of whether conditions for setting aside default may be imposed because we were able to construe the district court's imposition of an impossible condition as the denial of relief from default. *Id.* at 513. Since we have not done so previously, we must rule upon this issue today. In discussing the conditioning of defaults, we have noted that other circuits have held that Fed.R.Civ.P. 60(b) allows district courts to impose such conditions on relief from judgment of default. *Id.* at 512, referring to *Wokan v. Alladin International, Inc.*, 485 F.2d 1232, 1234 (3d Cir.1973); *Thorpe v. Thorpe*, 364 F.2d 692, 694 (D.C.Cir.1966).

By conditioning the setting aside of a default, any prejudice suffered by the non-defaulting party as a result of the default and the subsequent reopening of the litigation can be rectified. 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2700, p. 538 (1983). According to Wright, Miller & Kane, the most common type of prejudice is the additional expense caused by the delay, the hearing on the Rule 55(c) motion, and the introduction of new issues. Courts have eased these burdens by requiring the defaulting party to provide a bond to pay costs, to pay court costs, or to cover the expenses of the appeal. *Id.* The use of imposing conditions can serve to "promote the positive purposes of the default procedures without subjecting either litigant to their drastic consequences." *Id.* at 539.

In *Thorpe*, it was noted that the "philosophy of modern federal procedure favors trials on the merits, and default judgments should generally be set aside where the moving party acts with reasonable promptness, alleges a meritorious defense to the action, and where the default has not been willful." *Thorpe*, 364 F.2d at 694. Moreover, reasonable conditions may be imposed in granting a motion to vacate a default judgment. *Id.* The condition most commonly imposed is that the defendant reimburse the plaintiff for costs incurred because of the default. *Id.* In some cases, it may also be appropriate for the defendant to be required to post bond to secure the amount of the default judgment pending a trial on the merits. *Id.*

By setting aside the default with conditions, the district court judge in the instant case was attempting to facilitate discovery and was protecting the non-defaulting party by not requiring the plaintiff to pay for its costs. We find this behavior appropriate and not an abuse of discretion. Accordingly, we now hold that it is appropriate to

---

record for the benefit of a defaulting party. We leave that issue to another day.

**2.** Since we hold that Ethridge is individually liable for Aqualec's debts, defendants' contention that Ethridge is entitled to separate recognition is without merit. In addition, if we find that sanctions were properly imposed against Aqualec, Ethridge's argument that his responses are not at issue is also without merit.

condition setting aside a default upon the payment of a sanction.

■ Before granting the default judgment against defendants, the district court properly considered the effect prior court orders had upon defendants' behavior. The court observed that it had lifted three entries of default, imposed four orders for money sanctions against Ethridge for failure to comply with discovery requests and court orders, and held numerous hearings on motions to comply with discovery requests. Yet defendants failed to follow the May 1, 1985 Court Order and did not submit fully responsive answers to plaintiff's Request Number 8, failed to produce or specifically identify the particular documents requested in plaintiff's Request Numbers 3, 4, 5, and 8, and failed without justification to formulate their portion of a discovery motion stipulation according to Local Rule 7.15. After a review of the record, we agree that defendants have followed a deliberate, willful, studied course of frustrating plaintiff's attempts at discovery, complicating proceedings, and ignoring court orders.

Based upon this behavior, the district court's imposition of the ultimate sanction under Fed.R.Civ.P. 37(b)(2)(C) of entering default judgment on plaintiff's First Amended Complaint against defendants is justified. As the trial court recognized, a default judgment should be entered only in extreme circumstances. *Independent Productions Corp. v. Loew's, Inc.*, 283 F.2d 730, 733 (2d Cir.1960). The district court gave defendants many opportunities to avoid this sanction, but its orders had no effect on defendants' behavior. Defendants continued to act in willful or deliberate disregard of discovery rules and court orders. As we stated in *G–K Properties v. Redevelopment Agency*, 577 F.2d 645, 647 (9th Cir.1978):

> Litigants who are willful in halting the discovery process act in opposition to the authority of the court and cause impermissible prejudice to their opponents. It is even more important to note, in this era of crowded dockets, that they also deprive other litigants of an opportunity to use the courts as a serious dispute-settlement mechanism.

This type of behavior will not be condoned. Accordingly, we affirm the district court's default judgment.

### 2. Dismissal of Second Amended Counterclaim with Prejudice

■ The dismissal of an action with prejudice is also available as a sanction under Fed.R.Civ.P. 37(b)(2)(C). Since we have determined that defendants acted willfully or in bad faith in failing to comply with discovery rules and court orders or in flagrant disregard of those rules or orders, we find that the district court did not abuse its discretion in dismissing the Second Amended Counterclaim with prejudice. *G–K Properties*, 577 F.2d at 647.

### 3. Discovery Orders Pertaining to Defendants' Depositions

■ Defendants argue that various orders imposed by the district court should be reversed. After reviewing the record, we find that the district court did not abuse its discretion in entering these orders. Defendants refused to obey court orders, did not seek reconsideration of the magistrate's order of mootness, and did not appear for their deposition on May 14, 1985. The orders denying defendants' motion to vacate and/or quash notice of deposition, denying motion for change of place for taking the deposition, denying motion to stay, granting plaintiff's motion to compel deposition testimony, and awarding attorneys' fees and expenses for plaintiff to travel to Louisiana were all within the discretion of the trial judge.

### 4. Striking of Paragraph 8(c) and Dismissing Counts 2 and 3

■ In paragraph 8(c), defendants complained that plaintiff's negligent representation of them in the patent infringement lawsuit resulted in a loss of ten percent of any income from the patents. Defendants, however, did not allege a proposed or actual agreement regarding patents under which it would obtain income. Thus, we find that the district court did not abuse its discretion in striking this paragraph.

■ The issue of whether Counts 2 and 3 of Aqualec's Second Amended Counterclaim were improperly dismissed was not

raised by defendants in their Opening Briefs. In addition, the briefs do not specify that the district court committed error in dismissing them. If a brief fails to contain the contentions of the appellant with respect to the views presented, and fails to contain citations to authorities, statutes and the record, the issue is waived. Fed.R. App.P. 28(a)(4). We therefore hold that this issue has been waived.

5. The Recusal Motion

On September 27, 1985, Aqualec and Ethridge filed an Application to Assign Another Judge under 28 U.S.C. § 144. Defendants contended that the trial judge was imposing a "double standard" because she did not give fair and equal treatment to the Louisiana parties. Rather, they claim a biased and prejudicial attitude by the judge was revealed by her decisions against them. This application was denied on the same day it was filed. Denial of a motion for recusal is reviewed for an abuse of discretion. *United States v. Studley*, 783 F.2d 934, 939 (9th Cir.1986).

If, after obtaining knowledge of all of the facts, a reasonable person would conclude that the judge's impartiality might reasonably be questioned, recusal should be granted under 28 U.S.C. § 144. *Id.* (citation omitted). The alleged bias and prejudice must stem from an extrajudicial source. Furthermore, the motion must timely be filed. *Studley*, 783 F.2d at 939.

The grounds alleged by defendants are not extrajudicial since they involve the judge's performance while presiding over the case. *Id.* Also, the motion was filed two and one-half years after the case began. Moreover, a reasonable person would not conclude on the basis of defendants' allegations that the trial judge's impartiality might reasonably be questioned. Thus, the lower court did not abuse its discretion in denying the recusal motion.

## CONCLUSION

The rulings of the district court are AFFIRMED.[3]

---

3. On this record, Judge Rymer exercised remarkable and commendable patience, liberality

## SANCTIONS ON APPEAL

The defendants' deficient conduct continues on this appeal. We find the appeal frivolous and further find that defendants in their briefing have failed to comply with Fed.R.App.P. 28(a)(3) and (e) and 9th Cir.R. 28–2.8 in failing to make specific references to the record on appeal, especially in No. 86–6424. *See, e.g., Mitchel v. General Electric Co.*, 689 F.2d 877 (9th Cir.1982). A sanction is imposed on Mr. Ethridge in the sum of $1,000.00 payable to the clerk of this court within 30 days from the date of the issuance of the mandate by this court. Any failure to abide by this order may result in further sanctions.

Finally, we award the plaintiff double costs and reasonable attorneys' fees on this appeal. We remand the determination of the amount of the award of reasonable fees to the district court. Fed.R.App.P. 38; 28 U.S.C. § 1912.

IT IS SO ORDERED.

and fairness toward the defendants.