37 F.3d 1505
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 In re Raymond L. OLSEN, Debtor.
Raymond L. OLSEN, Plaintiff-Appellant,
v.
Gordon ZERBETZ, Trustee; First Bank; et al., Defendants-Appellees.
In re Raymond R. OLSEN, Debtor.
John R. OLSEN, Appellant,
v.
Gordon ZERBETZ, Trustee, Appellee.
 Nos. 93-35075, 93-35143.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 7, 1994.
Decided Sept. 19, 1994.
 
 Before: WRIGHT, WIGGINS, and THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 OVERVIEW
 
 2
 Raymond and Gladys Olsen, jointly, and O & S (their business) filed for chapter 11 relief in 1984. Both chapter 11 cases were later converted to chapter 7 cases, O & S's on September 24, 1987, and the Olsen's on December 4, 1987. A trustee was appointed to administer both chapter 7 cases.
 
 
 3
 When the Olsens filed bankruptcy, they owned certain real property. On or about March 20, 1989, the Olsens conveyed that property to John R. Olsen, their son, and his wife. Other facts relating to this transfer are set forth in the opinion filed with this memorandum. To undo this conveyance, the trustee sought an order avoiding the transfer under 11 U.S.C. Sec. 549 and that John Olsen turn over the property to the estate, see 11 U.S.C. Sec. 542. The bankruptcy court granted this relief.
 
 
 4
 In 1983, O & S and the Olsens opened checking accounts at First Bank. When the Olsens filed bankruptcy, they did not close these accounts or open new accounts as debtors-in-possession. First Bank was not notified when the bankruptcies were converted to chapter 7 cases. Until May 3, 1988, when the trustee requested the accounts be frozen and then released to him, the Olsens made deposits and withdrawals. The bank froze the accounts on May 3. The Olsens threatened action against the bank if it gave the funds to the trustee. The bank responded by filing an interpleader. The Olsens filed a claim to the funds in the interpleader and counterclaimed against the bank, alleging that the bank had (1) failed to exercise ordinary care in freezing the accounts, (2) acted with gross negligence and reckless indifference by consenting to the trustee's request for the freeze, and (3) converted the account balances. The bankruptcy court granted summary judgment to the bank on these counterclaims. The Olsens later refused to produce evidence supporting their claims to ownership of part of the account funds. The bankruptcy court in the end held that the Olsens' discovery default established that they owned none of the funds, and ordered the funds given to the trustee.
 
 
 5
 Ray Olsen and John Olsen appealed to the district court via various motions and documents. The district court affirmed the bankruptcy court's decisions. Ray and John Olsen ("Appellants")[1] have appealed.
 
 DISCUSSION
 
 6
 This court reviews de novo the bankruptcy court's and district court's conclusions of law. In re Frontier Properties, Inc., 979 F.2d 1358, 1362 (9th Cir.1992). The bankruptcy court's findings of fact are reviewed for clear error. In re BFP, 974 F.2d 1144, 1146 (9th Cir.1992), aff'd sub nom. BFP v. RTC, 114 S.Ct. 1757 (1994). This court may affirm on any ground supported by the record. Id.
 
 I. The Olsen-Olsen Conveyance
 
 7
 The opinion issued concurrently with this memorandum concludes that the district court did not err in holding that 11 U.S.C. Sec. 549(d) was equitably tolled in this case. Because the district court correctly ruled regarding the statute of limitation, the district court also correctly ruled that Appellants were not prejudiced by the district court's refusal to consider certain documents Appellants filed relating to that issue (CR 101, 3-4 n. 3).
 
 
 8
 Appellants argue that a turnover action under Sec. 542 does not apply to John Olsen, a transferee of property conveyed postpetition. Appellants claim Sec. 542 applies only to debtors. Appellants are incorrect. Section 542 applies to any entity possessing estate property. 11 U.S.C. Sec. 542(a).
 
 
 9
 Appellants also contend that the district court erred in describing them as "hopelessly insolvent." However, Appellants show neither that they are solvent nor how their solvency is relevant to this appeal. It might have been relevant to whether conversion of their bankruptcy (to a chapter 7 case) was proper. The district court found that the Olsens failed to appeal to the district court the conversion of their case, however. The Olsens have not appealed that ruling. Whether the Olsens are insolvent may also be relevant to whether they have standing to challenge the district court's order that they vacate estate property. Appellants have not argued the order was error, however. We therefore need not examine whether the Olsens are insolvent.
 
 II. The First Bank Accounts
 A. Unbonded Trustee
 
 10
 Appellants claim James Dodson, the original chapter 7 trustee, was not bonded from January 1987 through March 1988 and that afterwards his bonding was inadequate. They argue that this inadequacy rendered Dodson powerless to act as trustee, see Block v. United States, 9 F.2d 618 (2d Cir.1925), implying that the bank was at fault for freezing the accounts at his request.
 
 
 11
 First Bank responds that Dodson's impropriety, if any, supports the interpleader action. First Bank originally acceded to Dodson's request, thinking he was properly authorized. Appellants' objections convinced the bank that Dodson's authority was disputed, thus making an interpleader action necessary. The bank is correct. Appellants show no evidence indicating that the bank knew of a dispute or of any impropriety when the bank froze the accounts. Moreover, Appellants cite no authority for the proposition that the bank had a duty to determine whether Dodson was bonded before it acted on his otherwise lawful request.
 
 B. Adamson's Affidavit
 
 12
 To support factual allegations made in its defense, First Bank submitted the affidavit of James Adamson. Appellants claim the affidavit was unsigned, not notarized, and submitted in bad faith. The bad faith claim is founded on the notion that Adamson said he did not know about the bankruptcy. Appellants submitted an affidavit showing that Adamson did know that a bankruptcy had been filed, and allege that Adamson erroneously said there were two corporate accounts when there was only one.
 
 
 13
 None of Appellants' contentions has merit. Adamson's signed and notarized affidavit was filed shortly after the original, unsigned affidavit. In the updated affidavit, Adamson does not say he did not know of the bankruptcy. Rather, he says he did not know that the bankruptcy had been converted to a chapter 7 case until Dodson notified the bank and requested that the accounts be frozen. As to the number of accounts, Appellants present no testimony rebutting Adamson's figure. Moreover, no prejudice appears to have resulted from Adamson's error, if any.
 
 C. Judge Ross's Ex Parte Contact
 
 14
 On March 3, 1991, Judge Ross, the bankruptcy judge, called First Bank's attorney and the trustee's attorney regarding the hearing on First Bank's and the Olsens' cross-motions for summary judgment. Judge Ross asked counsel whether they would appear in person or by telephone. Appellants argue that this ex parte contact was improper and that Judge Ross should have recused himself as a result.
 
 
 15
 We disagree. Recusal must be predicated on an allegation of bias or prejudice stemming from an extrajudicial source. United States v. Hernandez-Escarsega, 886 F.2d 1560, 1581 (9th Cir.1989), cert. denied, 497 U.S. 1003 (1990); Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec, 854 F.2d 1538, 1548 (9th Cir.1988). Because Appellants failed to request recusal at the trial level, reversal is only appropriate if plain error, involving substantial prejudice, occurred. United States v. Bosch, 951 F.2d 1546, 1548 (9th Cir.1991), cert. denied, 112 S.Ct. 2975 (1992). Appellants allege no bias or prejudice stemming from the phone call. Any other prejudice alleged by Appellants came from Judge Ross's judicial acts. Hernandez-Escarsega, 886 F.2d at 1581; Nilsson, 854 F.2d at 1548. Thus, reversal is unwarranted.
 
 
 16
 D. Trustee's Failure to Collect/Statute of Limitation
 
 
 17
 Appellants claim the trustee's failure to collect assets or hold a creditors' meeting caused the Olsens' dispute with the bank. Dodson was appointed in late 1987. He requested on May 3 or 4, 1988, that the accounts be frozen. Appellants also contend that the March 7, 1991, order of the district court that the Olsens comply with discovery requests was filed after any statute of limitation on an action to collect the accounts had expired and was thus too late.
 
 
 18
 We are unpersuaded. The law does not require that the trustee obtain a court order that the Olsens relinquish the accounts before the trustee approaches the bank. The trustee's failure to collect assets or hold a creditors' meeting does not affect the liability of the bank or destroy the bankruptcy court's jurisdiction. Rather, the accounts became assets of the bankruptcy estates when the bankruptcies were filed. No statute of limitation bars the interpleader action. Moreover, the bankruptcy court was justified in requiring the Olsens to answer questions regarding the extent of their ownership of account funds.
 
 
 19
 Appellants' argument might be construed to be an objection to the entry of default against them for their failure to comply with discovery requests. The bankruptcy court held that, because the Olsens refused to produce evidence that some of the funds in the accounts were theirs, all of the funds belonged to the estates. The district court affirmed. Considering that the Olsens were patiently forewarned by the bankruptcy court; ordered, on penalty of default, to produce the information; and for a period of at least 15 months continuously refused to answer discovery requests, the district court's affirmance was proper. See Adriana Int'l Corp. v. Thoeren, 913 F.2d 1406, 1408, 1412-14 (9th Cir.1990), cert. denied sub nom. Lewis & Co. v. Thoeren, 498 U.S. 1109 (1991); Malone v. USPS, 833 F.2d 128, 130-33 (9th Cir.1987), cert. denied sub nom. Malone v. Frank, 488 U.S. 819 (1988); United Artists Corp. v. La Cage Aux Folles, Inc., 771 F.2d 1265, 1270-71 (9th Cir.1985); G-K Properties v. Redevelopment Agency of San Jose, 577 F.2d 645, 647-49 (9th Cir.1978).
 
 
 20
 E. Failure of Trustee to Answer Interpleader Action
 
 
 21
 Appellants argue that the trustee answered the interpleader complaint too late, over two years after the complaint was filed. (The docket reflects that the trustee answered one year and a few days after the complaint was filed, however.) They also complain that the trustee's answer was not filed within the limitation period. These arguments are meritless.
 
 
 22
 F. Dismissal of the Complaint Against First Bank
 
 
 23
 Appellants argue the district court erred in its "decision in favor of First Bank." The bank responds that it acted reasonably. When given notice by the trustee, it froze the accounts and gave immediate, oral notice to the Olsens.[2] The bank later gave written notice. The bank required Dodson to prove his authority. A number of the Olsens' checks were dishonored as a result of the freeze, yet the Olsens did not ask the bankruptcy court to lift the freeze from the accounts. Rather, the Olsens complained to the bank. The bank could not resolve the dispute between the Olsens and the trustee, so the bank filed the interpleader.
 
 
 24
 We reject the Olsens' argument. Cases in which a bank claims a right of set-off to accounts (that are otherwise part of a chapter 7 estate) are analogous. In those cases, as well as this case, freezing the accounts properly maintained the status quo until the account's owner could be determined. E.g., In re Edgins, 36 B.R. 480, 483-84 (9th Cir.Bankr.1984); In re Williams, 61 B.R. 567, 572-76 (N.D.Tex.1986).
 
 
 25
 Moreover, the Olsens caused the problem with the accounts by failing to surrender the accounts to the trustee, see 11 U.S.C. Sec. 521(4), and by continuing to use the accounts for personal funds. After the Olsens used the accounts for several months after conversion of the bankruptcies to chapter 7 cases, the bank could no longer know whose money was in the accounts. Had the bank complied with the trustee's request, the bank would have been open to liability to the Olsens if compliance were error. Had the bank complied with the Olsens' requests, it would have been open to liability under 11 U.S.C. Sec. 542, which requires entities possessing chapter 7 estate assets to give them to the trustee.
 
 
 26
 Finally, the Olsens made no effort to prove that they (rather than the estates) owned any of the funds in the accounts. The Olsens continued to refuse to produce documents, respond to interrogatories, or otherwise to give testimony supporting their assertions that part of the funds were personal. In the end, the bankruptcy court justifiably established facts against them. For these reasons, the Olsens were not ultimately prejudiced by the bank's reliance on the trustee's statements as to the source of the funds in the accounts.
 
 III. Other Arguments
 
 27
 Appellants make a number of other arguments that do not readily appear to be addressed to either the First Bank accounts or the adversary proceeding against John Olsen.
 
 
 28
 Appellants make numerous allegations that Northwest Acceptance Corporation (NAC), a creditor in O & S's and the Olsens' bankruptcies, engaged in some misconduct. Appellants also allege that CIT, another creditor, was somehow involved in perjury and committed other misdeeds. Neither NAC nor CIT is a party to this appeal, however. Appellants' complaints might be addressed to the trustee's failure to object to alleged misconduct by these creditors. A suit by the Olsens against the trustee regarding its handling of creditors' claims, such as was filed in In re Nash, 765 F.2d 1410, 1412 (9th Cir.1985), is not part of this appeal, however, which involves only issues relating to the interpleader and turnover actions. For these reasons, we refrain from addressing Appellants' arguments relative to NAC and CIT.
 
 
 29
 Appellants argue that someone forged James Dodson's signature on certain documents. They submit evidence by an alleged handwriting expert indicating that on some documents someone other than Dodson wrote Dodson's signature. Appellants apparently believe that the district court never addressed these forgery claims. Even if Dodson did not sign all of the papers Appellants discuss, however, that fact does not show that the signatures were not authorized or that they were made with intent to deceive. Nor does it show that the bank or any other party should have known that any signatures were forged. Finally, Appellants demonstrate no prejudice from these signatures.
 
 
 30
 Appellants allege throughout their brief that (1) Judge Ross, (2) the trustee's attorney, and (3) the bank's attorney have conspired to take money from the Olsens. Appellants give no facts supporting these allegations. Rather, the allegations appear to be founded on Judge Ross's and the attorneys' attempts to follow the law and the attorneys' attempts to serve their clients' interests. The district court properly rejected these arguments.
 
 
 31
 Appellants make some allegation regarding whether the bank's attorney should have received attorneys' fees in the action below. We cannot discern from Appellants' arguments any factual basis for contesting fees.
 
 
 32
 Appellants also contend that the district court erred in striking their motion for summary judgment (filed originally in the district court) and other, subsequent filings that supplemented that motion. The district court struck the summary judgment motion because it was in violation of the court's order that instructed Appellants to file an opening brief, a reply brief, and no other documents. Appellants' motion was filed in direct violation of the district court's order and briefing schedule. We affirm the district court's refusal to consider it.
 
 
 33
 The trustee, who states that he cannot understand Appellants' brief, asserts that every decision made by the district court was correct. Some of these decisions do not appear to be contested on appeal. We see no reason to discuss these uncontested issues, which include (1) the accuracy of the chapter 7 trustee's first interim accounting, (2) the propriety of the sale of certain malpractice claims, (3) whether a bankruptcy court order directing Appellants to file a more definite pleading was proper, (4) whether the bankruptcy court properly allowed the trustee to cross-designate his record on appeal, and (5) whether fees paid to the Olsens' chapter 11 counsel for work relating to the malpractice claims were proper.
 
 
 34
 The bank argues that it did not improperly vote against a reorganization plan submitted while the bankruptcies were in chapter 11. We have not found in Appellants' brief any objection to the bank's voting on any plan. It appears Appellants are not challenging the bank's actions regarding voting.
 
 
 35
 The Olsens have moved to consolidate these appeals with another appeal. The Olsens have alleged conclusorily that all three cases are similar. The Olsens have failed to identify similar issues or show any other reason why the cases should be consolidated, however. We therefore deny the motion to consolidate, without prejudice.
 
 
 36
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Technically, Ray Olsen appeals the district court's judgment regarding the bank accounts. John Olsen was not a party to the interpleader action. John Olsen appeals the district court's judgment relating to the turnover proceeding. Ray Olsen was not a party to the turnover proceeding. However, both have signed the appellant brief and made no attempt to delineate which arguments apply to which appeal. Moreover, the district court allowed John Olsen to assist his father in oral argument. For convenience only, we refer to both collectively as "Appellants."
 
 
 [2]
 Appellants dispute that oral notice was given to the Olsens. That the bank gave notice is shown in the affidavit of James Adamson. We have not found an affidavit in the record supporting Appellants' assertion that no notice was given