In the Matter of Wanda Faye BELL, Debtor.

Wanda Faye BELL, Plaintiff,

v.

William K. BELL, Sr., Defendant.

Bankruptcy No. N89–31887–WHD.
Adv. No. 93–1083N.

United States Bankruptcy Court,
N.D. Georgia,
Newnan Division.

Dec. 8, 1995.

Timothy N. Shepherd, Shepherd & Johnston, Griffin, Georgia, for debtor/plaintiff.

William K. Bell, Sr., Dallas, Georgia, defendant, pro se.

### ORDER

W. HOMER DRAKE, Jr., Bankruptcy Judge.

Currently before the Court in this matter is the Motion for Summary Judgment of Wanda Faye Bell (hereinafter "the Debtor"). The Debtor's Motion comes as part of an adversary proceeding, filed by her to determine the dischargeability of certain divorce-related obligations owed to William K. Bell, Sr. (hereinafter "the Defendant"), her former husband. As such, the matters involved herein constitute a core proceeding over which this Court has jurisdiction. *See* 28 U.S.C. § 157(b)(2)(I) & (K). The Court bases its conclusion upon the Findings of Fact and Conclusions of Law which follow.

### FINDINGS OF FACT

At the root of the instant controversy lies a General Motors Acceptance Corporation (GMAC) automobile loan, taken out by the Debtor and the Defendant during the term of their marriage and used by them to finance the purchase of a 1987 Chevrolet Cavalier. Both the husband and the wife had signed the promissory note to this loan, and they stood as joint obligors on the GMAC debt, as well as co-owners of the Chevrolet. Ultimately, however, the Bells sought a divorce, and ownership of the car, as well as responsibility for the GMAC loan, formed two of the many points upon which the parties had to sever their ties. Consequently, through a November 4, 1988, divorce settlement agreement and corresponding court decree, the parties agreed that the Debtor would assume responsibility for the GMAC loan payments pursuant to the following terms:

#### Personal Property

Each party shall retain all right, title and interest in and to all property in their possession as of the date of the execution of this contract.... [The Debtor] shall retain all right, title, and interest in and to the 1987 Chevrolet Cavalier and agrees to assume sole and exclusive responsibility for any debt secured by this automobile and agrees to hold [the Defendant] harmless on this debt.

(Settlement Agreement at ¶ 9). As a consequence of the divorce settlement's property-dividing provisions, it therefore appeared resolved that the Debtor would take over all responsibility for the GMAC loan, and her ex-husband would have no more to do with the matter.

Shortly thereafter, however, the Debtor filed her present Chapter 7 bankruptcy case, listing GMAC as a secured creditor and her ex-husband as a "decree" creditor. The Court then issued an Order granting the Debtor a general discharge of her scheduled debts. No longer able to pursue the Debtor for collection, GMAC began searching for other means by which to recoup its loan. Ultimately, the lender decided to focus its collection efforts upon the Defendant, as the original co-obligor on the note.

The Defendant initially complied with GMAC's demands for payment and satisfied approximately $856.00 of the debt upon which his wife was to have held him harmless. At that point, however, he sought his own bankruptcy discharge of the GMAC obligation. Moreover, the Defendant returned to the State Superior Court, where he asked Judge Whalen to find his ex-wife in contempt for having violated the terms of the original divorce decree.

Noting that the Debtor had discharged her own obligations under the GMAC note, Judge Whalen pointed out that the divorce decree placed a separate burden upon her to hold her ex-spouse harmless regarding that debt. Thus, reasoned the state court, unless

the Debtor's Chapter 7 bankruptcy had discharged her of both her original obligations to GMAC as well as her responsibilities under the divorce decree, her abnegation to her ex-spouse's detriment amounted to an act of sanctionable contempt. Judge Whalen, therefore, directed the parties to return to this Court and obtain a ruling as to the effect of the Debtor's Chapter 7 filing upon her divorce-related obligations.

In accordance with the state court's directions, the Debtor commenced this adversary proceeding by filing a Complaint to Determine Dischargeability of Debt on December 6, 1993. To support this action, the Debtor has alleged that, while 11 U.S.C. § 523(a)(5) excepts alimony and support obligations from discharge, it does not do so for debts of a property settlement nature. As such a property-oriented debt, reasons the Debtor, the present obligation consequently should be subject to a discharge in bankruptcy. In return, the Defendant has challenged the Debtor's portrayal of their divorce decree, arguing that it does in fact fall within the proviso of section 523(a)(5)'s exception to discharge. Having so framed the dispute, the Debtor now presents the Court with a Motion for Summary Judgment, a motion to which the Defendant has failed to respond.

## CONCLUSIONS OF LAW

### 1. The Standard for Summary Judgment

■ In accordance with Federal Rule of Bankruptcy Procedure 7056, which incorporates Federal Rule of Civil Procedure 56, this Court will grant a motion for summary judgment only in the absence of any material issue of fact, so as to make the movant entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The movant has the burden to establish that no such factual issue exists, *id.* at 324, 106 S.Ct. at 2553, and the Court will read the opposing party's pleadings liberally. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). As a drastic remedy, summary

judgment only will be granted when there is no room for controversy. *United States v. Earhart (In re Earhart),* 68 B.R. 14, 15 (Bankr.N.D.Iowa 1986); *Sell v. Heath (In re Heath),* 60 B.R. 338, 339 (Bankr.D.Colo. 1986).

■ Additionally, the pertinent local rules for the Northern District of Georgia, also applicable to bankruptcy proceedings, act to give notice to the parties that a motion will be ready for determination on the merits twenty days from the date of service of the motion. LR 220–1(b)(1) (N.D.Ga.) (applicable to bankruptcy proceedings pursuant to BLR 705–2 (N.D.Ga.)); *see Dunlap v. Transamerica Occidental Life Ins. Co.,* 858 F.2d 629, 632 (11th Cir.1988); *Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec,* 854 F.2d 1538 (9th Cir.1988). If no response or other opposition is filed, the Court will deem the facts as set forth in the movant's pleadings admitted. *Kelly v. United States,* 924 F.2d 355 (1st Cir.1991); *Louisiana Hydrolec,* 854 F.2d at 1545; *Ellenberg v. Mercer (In re Home Co.),* 108 B.R. 357 (Bankr.N.D.Ga.1989) (Cotton, B.J.). Finally, the Court will examine the record to determine whether the movant's motion and supporting pleadings provide a sufficient legal basis which would entitle the movant to judgment. *Dunlap,* 858 F.2d at 632; *Kelly,* 924 F.2d at 358. If the movant has set forth a sufficient legal basis, judgment is proper. *Id.*

### 2. The Applicability of Section 523(a)(5)

■ At its core, the bankruptcy process involves providing debtors with a discharge from their debt obligations. *See* 3 COLLIER ON BANKRUPTCY ¶ 523.05A (15th ed. 1995). Nonetheless, a variety of policy considerations simultaneously mandate that certain exceptions be made to that general rule of dischargeability. *Grogan v. Garner,* 498 U.S. 279, 286–87, 111 S.Ct. 654, 659–60, 112 L.Ed.2d 755 (1991). In the context of divorce-related obligations,[1] for instance, the Bankruptcy Code provides:

---

1. Through the Bankruptcy Reform Act of 1994, Congress has augmented the dischargeability system governing divorce obligations. *See* P.L. 103–394 (enacted on October 22, 1994), at

§ 304, 108 Stat. 4133 (codified as 11 U.S.C. § 523(a)(15)). Nonetheless, those amendments do not apply to cases such as the instant one, which pre-date the passage of the 1994 Act. *Id.*

(a) a discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt—

\*   \*   \*   \*   \*   \*

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement

\*   \*   \*   \*   \*   \*

11 U.S.C. § 523(a)(5). This exception accommodates a congressional concern that the bankruptcy process should not force a debtor's ex-spouse and dependents onto the public assistance roles. *See* Samuel Vasser, *Bankruptcy Meets Family Law: A Presumptive Approach to the Dischargeability of Equitable Distribution Awards,* 5 J.BANKR.L. & PRAC. 83, (1995). As with all exceptions to discharge, however, courts make a custom of construing section 523(a)(5) narrowly, and the divorce creditor bears the burden of proving that the involved obligation takes the form of alimony, maintenance or support. *See St. Laurent v. Ambrose (In re St. Laurent),* 991 F.2d 672, 680 (11th Cir.1993); *see also Benich v. Benich (In re Benich),* 811 F.2d 943, 945 (5th Cir. 1987); *Long v. West (In re Long),* 794 F.2d 928, 930 (4th Cir.1986); *Myers v. Myers (In re Myers),* 61 B.R. 891, 894 (Bankr.N.D.Ga. 1986) (Kahn, B.J.). Moreover, the applicability of section 523(a)(5), i.e., whether a particular obligation constitutes alimony, maintenance or support, turns on issues of federal rather than state law. *Biggs v. Biggs (In re Biggs),* 907 F.2d 503, 504 (5th Cir.1990); *Harrell v. Sharp (In re Harrell),* 754 F.2d 902, 904–05 (11th Cir.1985).

Here, the Debtor's obligation arose from that portion of the divorce agreement wherein she agreed to "retain all right, title, and interest in and to the 1987 Chevrolet Cavalier and agree[d] to assume sole and exclusive responsibility for any debt secured by this automobile and agree[d] to hold [the Defendant] harmless on this debt." To begin with, the Court finds it noteworthy that this provision fell within that section of the agreement dividing the couple's personal property, rather than the settlement's alimony/support provisions.[2] This suggestion, that the GMAC loan assumption constituted a settlement of property, also finds support in the substance of the agreement itself. The Debtor appears to have been made the recipient, rather than the provider, of all expressed support provisions in the divorce agreement. (Settlement Agreement at ¶¶ 4, 6). It, therefore, would appear both incongruous and self-defeating for the parties to have contemplated a "counter support" by the Debtor in the form of a loan assumption. Indeed, to the contrary, the Court finds that the parties contemplated a much more reasonable plan—the Debtor would get the car and, as part of that complete ownership, would assume all responsibility for the vehicle.

The Court acknowledges that certain cases have found a divorce-related automobile loan assumption to constitute support under 11 U.S.C. 523(a)(5). *See Lane v. Lane (In re Lane),* 147 B.R. 784, 787 (Bankr.N.D.Okla.1992); *Jones v. Jones (In re Jones),* 28 B.R. 147 (Bankr.W.D.Tenn. 1983). Upon closer examination, however, it becomes apparent that that line of case law is factually inapposite to the present case. Specifically, in each of those cases the divorce agreement had awarded the automobile to one spouse, yet directed the other spouse to make the related car payments. *See*

at § 702 (appearing as 11 U.S.C. § 101 note). The Court, therefore, will confine its inquiry solely to that standard offered by Bankruptcy Code section 523(a)(5).

**2.** The Court acknowledges that labels used by a state court will not control the application of 11 U.S.C. § 523(a)(5) in bankruptcy. *See Newman v. Newman (In re Newman),* 15 B.R. 67, 69 (Bankr.M.D.Fla.1981). By the same token, how-

ever, the Court does not find it appropriate to turn a completely blind eye to such categorization by the parties and the state divorce court. In short, the attachment of a label by the parties stands as a relevant but nondispositive matter for the Court's consideration. *Keeran v. Keeran (In re Keeran),* 112 B.R. 881, 883 (Bankr.N.D.Ohio 1990) (citations omitted).

*Lane,* 147 B.R. at 785; *Jones,* 28 B.R. at 151. In such a case, the Court would agree that a support-like provision would have been created. To the same extent, however, when the property-acquiring spouse merely assumes those responsibilities incident to her new-found ownership, she does not provide support. *See In re Coil,* 680 F.2d 1170, 1171 (7th Cir.1982) (indebtedness which only flows from an equalization of property right does not qualify for non-dischargeability); *see also Lewis v. Lewis (In re Lewis),* 39 B.R. 842, 846 (Bankr.W.D.N.Y.1984) (no support created where husband took car under divorce agreement and agreed to hold wife harmless on related car loan).

In fact, the Court finds it clear that the Debtor's agreement to hold the Defendant harmless on the GMAC obligation carries just such an exclusively property settling character.[3] Neither in form nor in substance did this transfer of liability serve to provide alimony or support to the Defendant. As such, the Court finds that the GMAC obligation, although assumed by the Debtor as part of her divorce, fails to come within the proviso of 11 U.S.C. § 523(a)(5).

## CONCLUSION

Due to its property settlement origin, the Debtor's obligation to hold William K. Bell, Sr., harmless with respect to the GMAC loan fails to satisfy the criteria of 11 U.S.C. § 523(a)(5). The Court having thus found the Debtor entitled as a matter of law to judgment on the question of dischargeability, it is **ORDERED** that the Motion for Summary Judgment by Wanda Faye Bell hereby is **GRANTED.** A separate judgment shall be attached hereto.

**IT IS SO ORDERED.**

---

**3.** Treating this fact pattern in the hypothetical, at least one commentator has suggested that a spouse who takes title to an automobile through property settlement may incur a "support" obligation if he does so subject to a "hold harmless" agreement on the vehicle's loan. *See* 2 DAVID G. EPSTEIN ET AL., BANKRUPTCY § 7–29, at 376–77 (1992). Plausible as such a circumstance may be, however, the loan-assuming spouse cannot properly be said to have incurred a support obligation when, at all relevant points in the settlement plan, he appears to have stood as the recipient, rather than the provider, of any support provisions.