**Gary J. WALKER, Plaintiff,**

v.

**BOEING CORPORATION; International Union, United Automobile, Aerospace & Agricultural Implement Workers of America (UAW); Neill Aircraft and Does 1 through 20, inclusive, Defendants.**

**No. CV 00–02557 WMB(SHx).**

United States District Court,
C.D. California.

May 9, 2002.

---

Christopher M. Stevens, Grady & Stevens, Beverly Hills, CA, for Gary J. Walker.

Daniel F. Fears, Jeffrey K. Brown, Payne & Fears, Irvine, CA, for Boeing Corporation, esa Boeing Company.

Henry M. Willis, Robert M. Dohrmann, Schwartz, Steinsapir, Dohrmann & Sommers, Los Angeles, CA, for International Union United Automobile Aerospace & Agricultural Implement Workers of America (UAW).

Jeremy Laurence Tissot, John J. Tasker, Callahan, McCune & Willis, West Los Angeles, CA, for Neill Aircraft.

Neill Aircraft, defendant.

## ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

WM. MATTHEW BYRNE, Jr., District Judge.

### I. INTRODUCTION

In this action, plaintiff Gary J. Walker alleges that his employer Douglas Aircraft Company ("DAC"), the predecessor in interest of defendant Boeing Company ("Boeing"), conspired with DAC's parts vendor Neill Aircraft Company ("Neill Air-

craft") to fabricate a sexual harassment pretext for his termination from DAC's employ. Walker further alleges that his union, defendant International Union, United Automobile Aerospace and Agricultural Implement Workers of America ("UAW"), breached its duty to protect his interests as against DAC. Walker asserts claims against Boeing and Neill Aircraft for wrongful termination in violation of public policy, conspiracy, intentional and negligent infliction of emotional distress, and defamation. Walker asserts two additional claims against Boeing for wrongful termination in violation of public policy and violation of the California Labor Code's prohibition on misrepresenting a former employee's record to other potential employers. Walker's only claim against his union is for breach of the duty of fair representation.[1]

Each of the three defendants now moves for summary judgment. Each contends that the claims against it are barred by the applicable statute of limitations and that the claims otherwise fail on the merits. For the reasons set forth below, this Court grants the motions for summary judgment in favor of all defendants on all causes of action.

## II. BACKGROUND

In 1989, Gary Walker went to work for Boeing's predecessor DAC as a Source Inspector responsible for ensuring that the parts produced by DAC's suppliers met DAC's specifications. He was a member of the UAW union. In August 1996, an employee of Neill Aircraft contacted Walker's supervisor Gary Clayback to report that Leticia Sanchez had accused Walker of sexually harassing her. Clayback notified Richard Scurr, a Human Resources Representative in the Employee Relations Department at Boeing responsible for conducting investigations of allegations of sexual harassment. In addition to Sanchez and Walker, Clayback and Scurr interviewed four witnesses of the alleged harassment at Neill Aircraft. They also took statements from two DAC employees that Walker requested be interviewed.

According to Clayback and Scurr, Sanchez stated that within the same month, Walker had touched her once on the calf, once on the upper thigh, and once on the buttocks. She also stated that each time she resisted and told him not to do it again. Travis Compton, Sanchez's direct supervisor, stated that Sanchez had complained three times, and that Walker tried to find Sanchez after she was reassigned to another area of the facility. Kerwin Hieb, a quality source representative at Neill, stated that he witnessed Walker put his hand on Sanchez's upper thigh, and another time he took over for Sanchez because she was too upset to finish her job, accusing Walker of grabbing her buttocks. Larry Jordan, a Manufacturing Planner for Neill, stated that he witnessed Walker put his hand on Sanchez's buttocks. Manual Remo, a friend of Sanchez, said that she had come to him on several occasions upset about Walker touching her.

On September 9, 1996, Clayback and Scurr called a meeting with Walker to question him about the complaints. Walter "Shorty" Smith, a shop steward for UAW Local 148, attended the meeting. According to Clayback and Scurr, Walker denied any and all incidences of touching,

---

1. Plaintiff also had claims against the UAW for intentional and negligent infliction of emo-

tional distress. These claims were dismissed by the plaintiff.

and asked that Kerwin Hieb, Travis Coleman, Shirley Avelar, and Cheryl Peterson be interviewed. Kerwin Hieb and Travis Coleman had already been interviewed. Shirley Avelar, a DAC source inspector, stated that Sanchez told her about the alleged incidences with Walker, and she told Sanchez to tell her management. Cheryl Peterson stated that she had not worked with Walker in several years, but spoke highly of him.

Scurr informed Walker on September 26, 1996, that Boeing had conducted an investigation and had come to the conclusion that he had sexually harassed Sanchez. Kevin St. Dennis, one of Walker's managers, then told Walker that he was going to be terminated that day. Walker testified in his deposition that September 26, 1996, was "the last day that I worked at Boeing." Walker Depo., v. I, 135:12–13. He testified that he was "advised [he] was being terminated on 9/27/96," and that he was "effectively terminated the same day." *Id.* at 135:18.

According to the UAW, the collective bargaining agreement ("CBA") between Boeing and the UAW provides for a five-step grievance procedure, ending in binding arbitration. Walker entered the grievance procedure at Step Three because his grievance concerned a discharge. Walker filed a grievance with the UAW on September 26, 1996, and the UAW filed a grievance with Boeing on the same day. The first meeting between Boeing and the UAW was approximately two weeks later. The UAW demanded that Boeing give it copies of all witness statements. Instead, Boeing read the statements to UAW representatives in Walker's absence.

The UAW decided to submit this dispute to mediation before proceeding to arbitration. The Union's position statement (1) challenged Boeing's failure to allow the Union to participate in the investigation, (2) attacked the evidence submitted by Boeing as inadequate or unreliable, (3) condemned Boeing's failure to consider Walker's excellent work record, (4) complained of Boeing's refusal to let the UAW inspect the statements it had obtained in its investigation, and (5) argued that Boeing did not have just cause to terminate Walker. The mediator concluded that an arbitrator would sustain Walker's discharge. Hence, the UAW voted to accept Boeing's disposition of Walker's grievance on May 19, 1997. Walker received notice that he lost the grievance at this time.

On May 23, 1997, Walker's attorney wrote to Local 148 to protest the UAW's representation during the grievance proceedings. On July 7, 1997, Walker filed an appeal with the UAW because his grievance did not go to arbitration. In response to an inquiry by the International Union as to why the Union had settled this grievance, Cheryl Bradshaw, international representative for UAW, stated that this case did not go to arbitration because of the strength of Boeing's claims. This included the interview of Sanchez, the statement from another Neill Aircraft employee that Sanchez complained to him three times, and the statements of two witnesses regarding the alleged inappropriate behavior. The Union accused Boeing of dismissing Walker for rejecting aircraft parts, attacked the investigation process, and claimed that the punishment did not fit the crime. However, Bradshaw stated that the mediator still ruled for Boeing, and that the grievance was not sent to arbitration because the UAW will not arbitrate grievances that it does not believe it is likely to win.

On December 22, 1998, the International Executive Board issued its decision to sus-

tain Walker's appeal on the grounds that Boeing did not cooperate with the UAW in the investigation by not giving the UAW any opportunity for cross examination of the witnesses. However, in the CBA between Boeing and the UAW, there is no agreement with Boeing that allows the UAW to require Boeing to revive a grievance. After Walker's appeal was sustained, the UAW attempted to get Boeing to agree to reinstate and arbitrate the grievance. Boeing refused. Walker learned of Boeing's decision the first week of April 1999.

Walker subsequently called the American Arbitration Association, and was informed that he could petition to compel arbitration. On June 16, 1999 and July 1, 1999, Walker wrote to the International President to ask the UAW to petition to compel arbitration. However, an attorney at UAW's legal department told Walker that the UAW had some reservations about bringing a petition to compel arbitration, and then said the UAW could not do so. In early July 1999, Walker began seeking legal assistance to pursue a claim against the union and the company. Walker also contacted the National Labor Relations Board on July 20, 1999 to ask about filing an unfair labor practice charge against the UAW. The Board advised Walker to find an attorney, and prepared a charge for him accusing the UAW of breaching its duty of fair representation by failing to process his grievance. On or about August 2, 1999, the UAW sent Walker a letter stating that the UAW could not persuade private lawyers to undertake his case, and that they were closing the file on his appeal. This lawsuit followed on January 30, 2000.

## III. LEGAL STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure states that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56. An issue of fact is genuine if the admissible evidence could justify a reasonable jury in returning a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). " 'If the evidence is merely colorable ... or is not significantly probative, ....' " *Id.* at 249–50, 106 S.Ct. 2505. Thus, "the mere existence of a scintilla of evidence" is insufficient. *Id.* at 252, 106 S.Ct. 2505.

The moving party for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact would find other than for the moving party. On an issue for which the nonmoving party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* Once the moving party satisfies its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.Proc. 56(e). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548.

Central District of California Local Rule 7.14.3 states that "[i]n determining any

motion for summary judgment, the Court will assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Issues' and (b) controverted by declaration or other written evidence filed in opposition to the motion." This rule imposes "an affirmative burden to list genuine issues with appropriate record citations in order to withstand the motion for summary judgment." *Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec,* 854 F.2d 1538, 1545 (9th Cir.1988) (per curiam). The Ninth Circuit has held that "when a local rule such as ... Rule 7.14.3 has been promulgated, it serves as adequate notice to nonmoving parties that if a genuine issue exists for trial, they must identify that issue and support it with evidentiary materials, without the assistance of the district court judge." *Id.* Local Rule 7.14.3, in other words, "relieve[s] the district court of any obligation to 'search through a voluminous record' for evidence of disputed facts." *Fair Housing Council of Riverside County, Inc. v. Riverside Two,* 249 F.3d 1132, 1137 (9th Cir.2001) (quoting *Nilsson, Robbins,* 854 F.2d at 1545).

## IV. DISCUSSION

### A. Neill Aircraft

Walker asserts claims against Neill Aircraft for wrongful termination in violation of public policy, conspiracy, intentional infliction of emotional distress, negligent infliction of emotional distress, and defamation. Neill contends that all of these claims are barred by the applicable statute of limitations. Alternatively, Neill contends that the claims fail on the merits.

### 1. Statute of Limitations

█ The one-year statute of limitations for personal injury claims, California Code of Civil Procedure section 340(3), governs all of Walker's claims against Neill Aircraft. *E.g., United States v. Hughes Aircraft Co.,* 162 F.3d 1027, 1035 (9th Cir. 1998) (wrongful termination in violation of public policy); *Naas v. Stolman,* 130 F.3d 892, 893 (9th Cir.1997) (intentional infliction of emotional distress); *Roman v. County of Los Angeles,* 85 Cal.App.4th 316, 322, 102 Cal.Rptr.2d 13 (2000) (negligent infliction of emotional distress); *Knoell v. Petrovich,* 76 Cal.App.4th 164, 168, 90 Cal.Rptr.2d 162 (1999), *review denied* (Mar. 01, 2000) (defamation). A tortious conspiracy is subject to the same one-year statute of limitations as the torts underlying the conspiracy: " 'There existing no cause of action for conspiracy in and of itself, the statute of limitations is determined by the nature of the action in which the conspiracy is alleged.' " *Boys Town, U.S.A., Inc. v. World Church,* 349 F.2d 576, 579 (9th Cir.1965) (quoting *Agnew v. Parks,* 172 Cal.App.2d 756, 765, 343 P.2d 118, 123 (1959)).

The statute of limitations has clearly run on each of Walker's claims against Neill Aircraft.[2] Walker was terminated on Sep-

---

**2.** Walker contends that the statute of limitations on his wrongful termination claim did not begin to run until his union grievance proceeding and appeals were concluded and his termination was therefore "final." The Supreme Court has rejected this precise argument in a case where the plaintiff "stopped work and ceased receiving pay and benefits" during the pendency of her union grievance proceeding and there was no indication that "any sort of 'formalized' final determination by management was required before [plain-

tember 27, 1996. By December of that year, at the latest, all of the conduct underlying his claims against Neill had taken place. Walker, however, waited more than three years—until January 31, 2000—to file this action. Absent equitable tolling, his claims are time-barred.

Walker argues that the statute of limitations was equitably tolled during the period in which he was pursuing administrative remedies. He cites *Daviton v. Columbia/HCA Healthcare*, 241 F.3d 1131 (9th Cir.2001) (en banc). In *Daviton*, the 9th Circuit held that "tolling is appropriate where the record shows (1) timely notice to the defendant in filing the first claim; (2) lack of prejudice to defendant in gathering evidence to defend against the second claim; and (3) good faith and reasonable conduct by the plaintiff in filing the second claim." *Id.* at 1137–38 (internal citations omitted). Walker points to no evidence that Neill Aircraft was granted "timely notice" of Walker's filing of a grievance with the UAW and Boeing. Indeed, there is nothing in Walker's papers that anywhere suggests that Neill Aircraft had anything to do with this case whatsoever after Walker's dismissal in late September, 1996. Walker's argument for equitable tolling fails under *Daviton*. Accordingly, his claims against Neill Aircraft are time-barred.

## 2. Merits

■ Even if Walker's claims are not time-barred, they fail on the merits.

Walker cannot bring a wrongful termination claim against Neill Aircraft, because the tort is "a creature of the employer-employee relationship" and he was never employed by that company. *Weinbaum v. Goldfarb, Whitman & Cohen*, 46 Cal. App.4th 1310, 1315, 54 Cal.Rptr.2d 462 (1996). Walker cannot bring a conspiracy claim against Neill Aircraft because there is no separate and distinct cause of action for conspiracy under California law. *Entertainment Research Group v. Genesis Creative Group*, 122 F.3d 1211, 1228 (9th Cir.1997). In any case, a third party who is not and never has been the plaintiff's employer cannot be liable for conspiracy to wrongfully terminate the plaintiff's employment in violation of public policy. *See Weinbaum*, 46 Cal.App.4th at 1315, 54 Cal. Rptr.2d 462.

■ Walker's emotional distress claims also fail. The claim of intentional infliction of emotional distress is based solely on Walker's contention that Neill's employees falsely accused him of sexual harassment as part of a conspiracy to get him fired from DAC. Defamatory accusations are insufficient to give rise to an action for intentional infliction of emotional distress. *See Alcorn v. Anbro Eng'g, Inc.*, 2 Cal.3d 493, 499 n. 5, 86 Cal.Rptr. 88, 468 P.2d 216 (1970); *Agostini v. Strycula*, 231 Cal. App.2d 804, 806–09, 42 Cal.Rptr. 314 (1965); *Perati v. Atkinson*, 213 Cal.App.2d 472, 473–74, 28 Cal.Rptr. 898 (1963). *See also Cook v. Winfrey*, 141 F.3d 322, 331–32

tiff's] discharge would have been considered final." *International Union of Electrical, Radio and Machine Workers, AFL—CIO, Local 790 v. Robbins & Myers, Inc.*, 429 U.S. 229, 235, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976); *see also Funk v. Sperry Corp.*, 842 F.2d 1129, 1130, 1133 (9th Cir.1988) (statute of limitations on wrongful discharge claim began to run on date plaintiff "stopped working" for

defendant). In Walker's case, as in *Robbins & Myers*, the undisputed fact is that Walker was "effectively terminated" and ceased to be paid on September 27, 1996, as he testified in his deposition. Nor has Walker submitted any evidence that "any sort of 'formalized' final determination by management was required" before his discharge became final.

(7th Cir.1998). Moreover, because Walker's termination was an *intentional* act, it also cannot give rise to a claim for *negligent* infliction of emotional distress.[3] *Edwards v. United States Fid. & Guar. Co.,* 848 F.Supp. 1460, 1466 (N.D.Cal.1994). Finally, Walker's defamation claim against Neill fails because the claim is based solely on the accusations of Ms. Sanchez and the corroborative statements of three Neill employees elicited by Boeing investigators prior to Walker's termination. Walker has offered absolutely no evidence that these Neill employees were motivated by the malice necessary to overcome the conditional privilege extended to workplace investigations of sexual harassment allegations.

## B. Boeing

Walker asserts seven claims against Boeing: violation of labor code section 1102.5; termination in violation of public policy; conspiracy; negligent infliction of emotional distress; intentional infliction of emotional distress; defamation; and violation of labor code section 1050. Boeing contends that all of these claims are barred by the applicable statute of limitations. Alternatively, Boeing contends that these claims fail on the merits.

### 1. Statute of Limitations

■ The one-year statute of limitations for personal injury claims, California Code of Civil Procedure section 340(3), also governs Walker's claims against Boeing.[4]

And as with Neill, the statute of limitations has clearly run on each of these claims. Absent equitable tolling, Walker's claims against Boeing are time-barred.

Walker argues that the statute of limitations was equitably tolled while he pursued administrative remedies. He again cites *Daviton.* Walker, however, fails to point to any evidence establishing timely notice and lack of prejudice, as *Daviton* requires. Under *Daviton,* "'the facts of the two claims [should] be identical or at least so similar that the defendant's investigation of the first claim will put him in a position to fairly defend the second.'" *Daviton,* 241 F.3d at 1138.(quoting *Collier,* 142 Cal. App.3d at 925, 191 Cal.Rptr. 681) (brackets in original). Walker has failed to establish that the facts of the two claims are sufficiently similar. Walker's grievance form, which Boeing's Labor Relations department received a little more than a week after Walker was advised of his termination on September 26, 1996, merely stated that he "was wrongfully terminated on 9/26/96. For sexual harassment during source inspections at Neill Aircraft. Never has this occurred. I have known this woman Leticia Sanchez many year and after writing a tag at Neill Aircraft and scrapping parts I was notified I was under investigation." Stevens Decl., Ex. 3. Walker now asserts claims for wrongful termination in violation of public policy; conspiracy; emotional distress; defamation; and violation of labor code 1050. Boeing was not put on notice and given the fair opportunity to collect evidence and

---

**3.** Walker's termination from Boeing's employ—obviously an intentional act—is the exclusive basis of his claim of negligent infliction of emotional distress.

**4.** Labor Code section 1050 claims are similar to claims for defamation or tortious infliction

of emotional distress and are governed by the same one-year limitations period for "[a]n action for . . . injury to or for the death of one caused by the wrongful act or neglect of another. . . ." Cal.Code Civ.Proc. § 340(3)

prepare a defense to these claims. In fact, as to most of these claims, Walker doesn't even really argue the point. He nowhere alleges that his 1996 grievance put Boeing on notice of the later claims for negligent and intentional infliction of emotional distress, defamation, conspiracy and violation of labor code 1050. At the summary judgment stage, "the plaintiff has the burden of proving facts that would toll the statute." *Vaughn v. Teledyne, Inc.*, 628 F.2d 1214, 1218 (9th Cir.1980). Walker has clearly not met this burden with at least his claims for negligent and intentional infliction of emotional distress, defamation, conspiracy and violation of labor code 1050.

Walker does argue that Boeing was put on notice of both claims for wrongful termination in violation of public policy. His argument fails for two reasons. First, Walker has not established that the claims are similar, much less identical. The strongest evidence Walker has that Boeing was on notice of a claim for wrongful termination in violation of public policy is a letter sent by his attorney to Boeing in October 1996 that alleged the sexual harassment charge against Walker was only a pretext and that, "in reality, Mr. Walker was terminated because he rejected parts from Neill which were substandard, and not fabricated from the correct material." This letter does not support the argument, however, that Boeing was on notice of a claim for wrongful termination in violation of public policy. By this letter, or by any of the other evidence submitted by the plaintiff, Boeing was not put on notice of the need to investigate alleged unsafe parts, improper inspection approvals, retaliation, or FAA violations. Even if retaliatory termination in violation of federal aviation policy is accompanied by a sexual harassment pretext, the failure to adequately raise the aviation issues in the original grievance deprives the defendant of an opportunity to investigate the technical and legal issues surrounding the claim for retaliation in violation of public policy.

The second problem with Walker's tolling argument is that he has not established, as he must, that the two claims involve the same defendants.[5] After May 1997, when the grievance was dropped, Walker had no claim against Boeing. The administrative remedies from that point forward were solely and exclusively directed at the Union. Moreover, the end result of this appeal could only be to try and encourage Boeing to reinstate the grievance. The Union had no authority to force Boeing to reinstate. And, in fact, Boeing did not reinstate. Thus, even if equitable tolling applied, it applied only until May 1997. His claims remain time-barred.

### 2. Merits

Even if Walker's claims against Boeing are not time-barred, they fail on the merits.

#### a. Wrongful Termination in Violation of Public Policy

■ In order to establish a claim for wrongful termination in violation of public

---

**5.** There can be an exception when a "defendant in the second claim was alerted to the need to gather and preserve evidence by the first claim even if not nominally a party to that initial proceeding." *Daviton*, 241 F.3d at 1140 (citations omitted). However, even if it is allowed that Boeing was on notice of a claim for wrongful termination at the time of the original grievance, there was no claim against Boeing after 1997; Walker's appeal to the Union—which could not force Boeing to do anything—did not alert Boeing to the need to gather and preserve evidence.

policy or so-called " 'whistle-blower harassment,' " Walker must show (1) that he engaged in activity protected by a statute or regulation of public importance, and (2) that he would not have been terminated but for his participation in the protected activity. *Turner v. Anheuser–Busch, Inc.,* 7 Cal.4th 1238, 1257–58, 32 Cal.Rptr.2d 223, 876 P.2d 1022 (1994) (In Bank) (emphasis added), *overruled on other grounds, Romano v. Rockwell Int'l, Inc.,* 14 Cal.4th 479, 59 Cal.Rptr.2d 20, 926 P.2d 1114 (1996). Here, Walker contends that he engaged in activities protected by both California Labor Code section 1102.5 and FAA regulations governing quality certification for products and parts. Pl.'s Compl. ¶¶ 36, 43.

Boeing does not dispute that if Walker disclosed his safety or quality control concerns to a government agency, then he engaged in an activity protected by a statute of public importance. What Boeing challenges is the element of causation, which requires that Walker demonstrate that he was terminated *"because* he reported . . . 'an alleged violation of a statute of public importance.' " *Turner,* 7 Cal.4th at 1257–58, 32 Cal.Rptr.2d 223, 876 P.2d 1022 (emphasis added). To show causation, Walker must satisfy "a 'but for' test

(i.e., that the employee would not have been discharged, despite the legitimate reasons, but for the wrongful reasons)." *Balog v. LRJV, Inc.,* 204 Cal.App.3d 1295, 1310–11, 250 Cal.Rptr. 766 (1988), *opinion modified on denial of reh'g* (Sept. 20, 1988).

Walker has failed to raise a genuine issue of material fact as to whether he was terminated because he reported the alleged safety violations to the FAA or some other government agency. The only evidence that Walker has submitted in support of his claim that Boeing terminated him for wrongful motives contrary to public policy is (1) deposition testimony and documentary evidence that he rejected certain parts before being effectively terminated; (2) deposition testimony that he sent a letter to the FAA raising safety or quality concerns "two or three days after my termination"; and (3) deposition testimony as to his belief that Boeing was motivated to terminate his employment, and that Neill Aircraft conspired to cause his termination, in order to retaliate for his raising safety or quality concerns about parts from Boeing suppliers. Walker Depo., v. I, 146:1–5, 187:1–25; Pl.'s Statement of Genuine Issues in Opp. To Boeing's Mot. For Summ.Judg. ¶ 11.[6]

---

**6.** In his supplemental opposition, Walker also cites the deposition testimony of Dennis Jones to the effect that Gary Clayback wanted to terminate Walker because Walker was rejecting parts. There are at least two problems with this. First, Walker has not provided a competent copy of Dennis Jones's deposition testimony. The only evidence submitted with the supplemental opposition is the declaration of Walker's attorney, Christopher Stevens. This declaration is a thick, unindexed, unauthenticated assemblage of what appears to be excerpts from a number of depositions. There is no identifiable deposition testimony of Dennis Jones in this declaration. There is one unidentified document, about 40 pages in

length, that may, or may not, be an excerpt from the deposition of Dennis Jones. Obviously, the Court cannot consider evidence that is neither identified nor authenticated.

Even if the Court did consider this evidence, however, Walker has still failed to raise a triable issue of material fact. The unidentified deponent says that Clayback told him that he was upset that Walker was rejecting parts that Clayback thought should have been accepted. When the deponent was asked specifically what the complaints of Clayback were, the deponent said they were "always the same," that Clayback felt "Walker was not buying his parts at a supplier that he needed to get into a plant for production

The evidence that Walker rejected certain parts is insufficient to raise a genuine issue of material fact with regard to Boeing's motives in causing the termination of his employment. Absent some evidence that the alleged rejection constituted the reason that Boeing terminated Walker's employ, the mere fact that Walker rejected parts is not probative of retaliation.

Walker's deposition testimony that he sent a letter to the FAA "two or three days after [his] termination" is also insufficient to create a genuine issue of material fact. Walker Depo., v. I, 146:1–5. Walker does not point to any evidence that Boeing or Neill Aircraft even knew about the letter, which, by his own admission, was sent subsequent to his effective termination. The letter therefore cannot raise a genuine issue of material fact as to the causal link between the letter and Walker's discharge.

Finally, Walker's deposition testimony as to his belief that Clayback and Scurr were motivated by retaliation cannot create a triable issue of fact because Walker lacks personal knowledge on the subject and his testimony lacks foundation. "A plaintiff's belief that a defendant acted from an unlawful motive, without evidence supporting that belief, is no more than speculation or unfounded accusation about whether the defendant really did act from an unlawful motive. To be cognizable on

summary judgment, evidence must be competent." *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1028 (9th Cir.2001). In this case, as in *Carmen,* "there [is] no evidence in the deposition or anywhere else in the summary judgment papers of any basis in personal knowledge for the plaintiff's subjective belief about the defendant's motive." *Id.* Walker's speculation about the motives of Clayback and Scurr in causing the termination of his employment are inadmissible under the Federal Rules of Civil Procedure and the Federal Rules of Evidence, which require the Court to disregard deposition testimony offered in opposition to a motion for summary judgment unless such testimony is competent, admissible, and based on the witness' personal knowledge of the matter. *Id.* (citing Fed.R.Civ.P. 32(a), 56(e), and Fed.R.Evid. 602).

In *Carmen,* the plaintiff testified "that she believed she was denied a position because of her [civil rights] lawsuit," but "did not testify to any admission by a representative of defendant or any other evidence, direct or circumstantial, to support this subjective statement." *Id.* Similarly, Walker's only basis to dispute Boeing's contention that Walker was terminated solely because of his inappropriate and prohibited conduct towards Sanchez is his deposition testimony that he believes the proffered reason for his ter-

requirements." The deponent said he then always asked Clayback the same thing: "Was Gary right? And always Gary Clayback would say, 'Yes, he's right, but I have to have the parts.' " The deponent later testified that when Clayback informed him of Walker's termination, Clayback explained that it was because of a sexual harassment claim. The deponent never says that Walker was terminated for rejecting parts, nor that Clayback ever said or intimated that Walker was terminated for rejecting parts. The deponent never says that the sexual harassment claim against

Walker was fabricated or that Clayback suggested that it was. The best that the unidentified deponent's testimony could do for the plaintiff is to establish that Clayback often disagreed with Walker's rejection of parts, that Clayback wanted Walker terminated, and that Clayback was satisfied when Walker was terminated. This evidence is inadmissible as presented, but even if it was admissible, it would not create a triable issue of material fact that Walker was wrongfully terminated in violation of public policy.

mination to be a pretext for retaliation in violation of public policy.[7] Walker, like the plaintiff in *Carmen,* did not submit any evidence that Boeing employees told him that he was being terminated because he had rejected parts or even that they were upset with him for rejecting parts. Walker's testimony about the facts surrounding his alleged rejections of parts and complaint to the FAA do not raise a genuine issue of fact as to whether he was terminated in retaliation for protected activities no more than the fact that the *Carmen* plaintiff had in fact brought a civil rights claim against her employer raised a genuine issue of fact as to whether she was terminated because of that claim. *Id.*

Even on the assumption that Walker has made out a prima facie case for wrongful termination in violation of public policy, he had failed to rebut Boeing's showing of a legitimate, nonretaliatory reason for his termination. When a plaintiff makes out a prima facie showing, the defendant may overcome the inference of retaliation that results "by articulating some 'legitimate, nondiscriminatory reason' for its conduct," which Boeing may accomplish in this case by offering evidence Walker's misconduct, and not his protected activity, "was the determining factor in the [termination] decision." *Steckl v. Motorola, Inc.,* 703 F.2d 392, 393 (9th Cir.1983). Boeing, and indeed Walker himself, have offered evidence that the alleged sexual harassment was the determining factor in his termination. Walker is thus required "to demonstrate that [Boeing's] explanation was but a pretext for discrimination" by producing "specific, substantial evidence of

pretext and that [retaliation against protected activity] was a determining factor in the decision." *Id.* For the same reasons that Walker has failed to raise a genuine issue as to the prima facie requirement that he was discharged because he engaged in protected activity, he has failed to raise a genuine issue as to pretext. *Id.* ("Steckl's mere assertions that Motorola had discriminatory motivation and intent in failing to promote him were inadequate, without substantial factual evidence, to raise an issue precluding summary judgment.").

### b. Tortious Infliction of Emotional Distress

■ Under section 3602 of the California Labor Code, where workers' compensation is available to an employee, "the right to recover such compensation is ... the sole and exclusive remedy of the employee ... against the employer." Cal. Lab.Code § 3602. This provision covers "'any injury or disease arising out of the employment,'" including "purely emotional" injuries, noncompensable injuries, and injuries resulting from an employer's intentional or negligent misconduct. *Livitsanos v. Superior Court,* 2 Cal.4th 744, 747–56, 7 Cal.Rptr.2d 808, 828 P.2d 1195 (1992) (In Bank) (quoting Cal.Lab.Code § 3208). The California Supreme Court has held that if the injury arises out of employment and if the employer maintains workers' compensation insurance, then "claims for intentional or negligent infliction of emotional distress are preempted by the exclusivity provisions of the workers' compensation law." *Id.* at 747, 7 Cal. Rptr.2d 808, 828 P.2d 1195.

---

**7.** Again, Walker also cites to the deposition testimony of Dennis Jones. See note 7 for a discussion of this evidence.

Here, Walker testified in his deposition that the decision to terminate his employment was the only act by Boeing or its employees which gave rise to his negligent infliction of emotional distress claim. Walker Depo., v. II, 408:15–25, 409:1–11 (stating that sole basis of Walker's claims for emotional distress is that employees of defendants "Terminated me for something that I never did."). Walker claims that workers' compensation preemption does not apply here because his termination was retaliatory and because it was accompanied by defamation and humiliation. However, the California Supreme Court has held that an allegedly wrongful and tortious termination process is "a normal part of the employment relationship" that is "within the [workers'] compensation bargain." *Vacanti*, 24 Cal.4th at 820–21, 102 Cal.Rptr.2d at 580, 14 P.3d at 249–50 (citations and internal quotations omitted). "[T]ermination, a known risk of any employment relationship, does not, by itself, insulate a cause of action from the exclusive remedy provisions." *Id.* at 821, 102 Cal.Rptr.2d at 581, 14 P.3d at 250. Walker's emotional distress claims against Boeing are therefore preempted by the workers' compensation exclusivity provisions of the California Labor Code.

Even if these claims were not preempted, the allegations of Walker do not give rise to claims for tortious infliction of emotional distress. First, because Walker's termination was as an *intentional* act, it cannot give rise to a claim for *negligent* infliction of emotional distress. *Edwards v. United States Fid. & Guar. Co.*, 848 F.Supp. 1460, 1466 (N.D.Cal.1994). Walker's claim for intentional infliction of emotional distress fails for a variety of reasons. "Under California law, to make out a cause of action for intentional infliction of emotional distress, a plaintiff must show,

in relevant part, that the defendant engaged in extreme and outrageous conduct that exceeded the bounds of what is generally tolerated in a civilized society." *Braunling v. Countrywide Home Loans, Inc.*, 220 F.3d 1154, 1158 (9th Cir.2000). Terminating an employee for improper or discriminatory reasons, like many other adverse personnel management decisions, is insufficiently extreme or outrageous to give rise to a claim for intentional infliction of emotional distress. *Janken v. GM Hughes Elecs.*, 46 Cal.App.4th 55, 61, 79–80, 53 Cal.Rptr.2d 741 (1996). To the extent that it is based upon his termination, Walker's claim for intentional infliction of emotional distress must fail.

■ Nor may Walker premise his cause of action for intentional infliction of emotional distress upon allegedly defamatory statements by Boeing employees. "Conduct which exhibits mere rudeness and insensitivity does not rise to the level required for a showing of intentional infliction of emotional distress." *Braunling*, 220 F.3d at 1158. Under California law, which tracks section 46 of the Restatement (Second) of Torts, the tort of intentional infliction of emotional distress "does not extend to 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities,' but only to conduct so extreme and outrageous 'as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Alcorn v. Anbro Eng'g, Inc.*, 2 Cal.3d 493, 499 n. 5, 86 Cal.Rptr. 88, 468 P.2d 216 (1970) (collecting California cases) (quoting *Restatement (Second) of Torts* § 46, cmt. d, at 73 (1965)); *see also Cochran v. Cochran*, 65 Cal.App.4th 488, 496, 76 Cal.Rptr.2d 540 (1998) (quoting *Restatement (Second) of Torts* § 46, cmt. d, at 73 (1965)).

California cases cited with approval by the California Supreme Court in *Alcorn* confirm that a mere allegation that one employee defamed another is insufficient basis for an intentional infliction of emotional distress claim. *See, e.g., Agostini v. Strycula*, 231 Cal.App.2d 804, 806–09, 42 Cal.Rptr. 314 (1965) (where plaintiff alleged that defendants falsely and maliciously stated that he was unsuited for duties involving group supervision of children, court held that plaintiff had not alleged facts creating liability under section 46 of the Restatement of Torts (2d) and comment (d) thereto); *Perati v. Atkinson*, 213 Cal.App.2d 472, 473–74, 28 Cal.Rptr. 898 (1963) (where plaintiff alleged that co-worker made "knowingly untrue" statement to the effect that plaintiff failed to follow orders, court held that the "allegations here fall far short of 'extreme outrage' "). The Seventh Circuit has held in applying this Restatement language under Illinois law,[8] "claims of intentional infliction of emotional distress based upon defamation" must be dismissed, "on the ground that the conduct [is] not 'extreme and outrageous.' " *Cook v. Winfrey*, 141 F.3d 322, 331–32 (7th Cir.1998) (brackets added)

### c. Defamation

■ "Under California law, '[t]he tort of defamation exists whenever a false and unprivileged statement which has a natural tendency to injure or which causes special damage is communicated to one or more persons who understand its defamatory meaning and its application to the injured party.' " *Isuzu Motors Ltd. v. Consumers*

Union of United States, Inc., 66 F.Supp.2d 1117, 1122 (C.D.Cal.1999) (quoting *Jackson v. Paramount Pictures Corp.*, 68 Cal. App.4th 10, 26, 80 Cal.Rptr.2d 1, 9 (1998)). Walker premises his defamation claim upon statements made by Scurr and Clayback between September and December 1996 to the effect that Walker "was guilty" of Sanchez's allegation of sexual harassment. Walker Depo., v. II, 387:10–395:3.

Boeing contends that Walker has failed to raise a genuine issue of material fact with respect to the requirements that an allegedly defamatory statement must have actually been communicated to one or more persons who understood its defamatory meaning and its application to Walker himself. Indeed, Walker's only evidence in this regard is his deposition testimony that "other source inspectors" named George Arroyo and Wesley Akena informed him "through word of mouth" that Scurr stated that Walker was guilty of sexual harassment, and that Walker learned through "word of mouth" from a number of "local source inspectors" (only five of which are identified by name) that Clayback told them that Walker was guilty. *Id.* at 389:14–391:14. With regard to Scurr's alleged statement, Walker could not identify a single person to whom the statement was directed. *Id.* at 389:7–22.

Boeing argues that Walker's remarks about what Scurr and Clayback told other Boeing employees outside of Walker's presence is inadmissible hearsay that cannot prevent entry of summary judgment for defendants. Several cases support this

---

8. Both the California Supreme Court and the Illinois Supreme Court apply the Restatement rule that the tort of intentional infliction of emotional distress "does not extend to 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.' " *McGrath v. Fahey*, 126 Ill.2d 78, 127 Ill.Dec. 724, 727, 533 N.E.2d 806, 809 (1988) (quoting *Restatement (Second) of Torts* § 46, cmt. d, at 73 (1965)).

view.[9] Deposition testimony is "insufficient to create a genuine issue of fact [where] it was not made on plaintiff's personal knowledge, did not set forth facts which would have been admissible in evidence, and did not show affirmatively that plaintiff is competent to testify to the matters stated therein." *Urbina v. Gilfilen,* 411 F.2d 546, 547–48 (9th Cir.1969) (citing Rule 56(e), Federal Rules of Civil Procedure).[10] As Walker can point to nothing

**9.** *See Courtney v. Canyon Television & Appliance Rental, Inc.,* 899 F.2d 845, 851 (9th Cir.1990) (plaintiff's statement that employee of defendant defamed him in front of defendant's customers was hearsay and "summary judgment on the defamation claim was proper.") (citing *Fong v. American Airlines, Inc.,* 626 F.2d 759, 762–63 (9th Cir.1980)); *Fong v. American Airlines, Inc.,* 626 F.2d 759, 762–63 (9th Cir.1980) (plaintiff's statement as to what defendant's employee told him she observed and what another of defendant's employees said to her was inadmissible hearsay and failed to raise a genuine issue of material fact); *Albert v. Loksen,* 239 F.3d 256, 266–67 (2d Cir.2001) (finding inadmissible plaintiff's statement that one defendant told him that the reason for his discharge was that a codefendant defamed him, and holding: " 'When challenged on a motion for summary judgment, a plaintiff may not rely solely on hearsay or conclusory allegations that the slanderous statement was made.' ") (citing, inter alia, *Courtney v. Canyon Television & Appliance Rental, Inc.,* 899 F.2d 845, 851 (9th Cir.1990)); *Bularz v. Prudential Ins. Co. of Am.,* 93 F.3d 372, 377–78 (7th Cir.1996) (although it would not have been hearsay for first-hand witness of defamatory statement to testify, it was hearsay for someone who heard about the statement from an actual witness to do so); *John and Vincent Arduini Inc. v. NYNEX,* 129 F.Supp.2d 162, 173 (N.D.N.Y. 2001) (where one of plaintiff cleaning company's employees submitted an affidavit declaring that defendant's employee told a third party that plaintiff "was no good," court held that affidavit "falls squarely within the purview of the hearsay rule and is inadmissible."); *DeMaria v. Washington County,* 12 F.Supp.2d 1093, 1100 (D.Idaho 1996) (finding inadmissible section 1983 plaintiff's declaration that police dispatcher heard defendants and employees of defendants refer to plaintiff in ethnically discriminatory manner); *GMO Rice v. Hilton Hotel Corp.,* No. 85–1470, 1987 WL 16851, *1–2 (D.D.C. Sept.1, 1987) ("In this instance, plaintiff seeks to testify that one person ('B') told the plaintiff that another person ('A') made a statement defaming plaintiff. Plaintiff offers this testimony in an effort to show that 'A' did, in fact, make the defamatory statement. This is inadmissible hearsay; plaintiff has no personal knowledge as to whether the defamatory statement was made and he cannot be cross-examined with respect thereto."); *Sires v. Luke,* 544 F.Supp. 1155, 1160 (S.D.Ga.1982) ("The use of depositions under Rule 56 is limited to those statements made 'on personal knowledge' [that] would be admissible in evidence. Testimony as to what a nonparty witness may have told [a defamation claimant] is hearsay and inadmissible."); *Leo Winter Assocs. v. Dep't of Health and Human Servs.,* 497 F.Supp. 429, 432 (D.D.C. 1980) ("Defendants point out that Plaintiff has no personal knowledge of defamation, and that each allegation of defamation in Plaintiff's only affidavit is hearsay. Accordingly, his affidavit cannot be relied upon to raise a genuine issue of fact.").

**10.** There is an argument that Walker does not raise for why these statements by Boeing employees may not be hearsay, as admissions by agents of a party-opponent under Rule 801(d)(2)(D) of the Federal Rules of Evidence. That rule provides that "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship," is "not hearsay." Fed.R.Evid. 801(d)(2)(D). Because the statements by Walker's coworkers concerned a matter within the scope of their employment by Boeing, i.e. an alleged incident of sexual harassment by their coworker Walker against an employee of Boeing's vendor, and were made during the course of their employment with Boeing, they may not be hearsay.

Walker, however, has failed to make a sufficient showing to invoke Rule 801(d)(2)(D). "Rule 801(d)(2)(D) requires the proffering party to lay a foundation to show that an otherwise excludable statement relates to a matter within the scope of the agent's [agency or] employment. As the proponent of the evidence, [Walker] ha[s] the burden to dem-

beyond his own inadequate deposition testimony, his claim of defamation must fail.

### d. Labor Code Section 1050

Section 1050 of the California Labor Code provides: "Any person, or agent or officer thereof, who, after having discharged an employee from the service of such person or after an employee has voluntarily left such service, by any misrepresentation prevents or attempts to prevent the former employee from obtaining employment, is guilty of a misdemeanor." Cal.Lab.Code § 1050. A civil action to enforce this section is created by Labor Code section 1054, which provides that "any person or agent or officer thereof, who violates any provision of sections 1050 to 1052, inclusive, is liable to the party aggrieved, in a civil action, for treble damages." *Id.* § 1054.

Walker has failed to raise a genuine issue of fact regarding whether Boeing ever prevented or attempted to prevent Walker from obtaining further employment by means of misrepresentations. In his opposition to Boeing's motion for summary judgment, the only evidence that Walker relies upon to support his section 1050 claim is his deposition testimony that Don McPherson, an employee of Mikol Missile Air, which Walker describes as a Boeing supplier, told Walker that "he'd love to hire me, but Gary Clayback would be all over him about it and it would cost him work because Gary Clayback believed I was a sexual predator." Pl.'s Opp. to Boeing's Mot. for Summ.Judg. at 17. As an out-of-court statement by a person other than a party or a party's agent or employee that is offered in evidence to prove the truth of the matter asserted, Walker's testimony about what McPherson said about what Clayback told him he believed is inadmissible hearsay that cannot prevent entry of summary judgment for defendants.

Elsewhere in his deposition, Walker testified about a point-based rating that he

onstrate this foundational requirement." *United States v. Chang,* 207 F.3d 1169, 1176 (9th Cir.), *cert. denied,* 531 U.S. 860, 121 S.Ct. 148, 148 L.Ed.2d 98 (2000), *reh'g denied,* 532 U.S. 953, 121 S.Ct. 1430, 149 L.Ed.2d 368 (2001) (citations and internal quotations omitted; brackets added in original) (affirming exclusion of defendant's testimony concerning statement by agency of government where there was no showing as to foundation). Walker points to no evidence, let alone "substantial evidence," as to the existence or scope of the agency relationship between the other source inspectors and DAC/Boeing. It is not clear, for example, for whom these source inspectors were employed, whether they had any responsibility over investigations of employee misconduct or other personnel decisions, or whether their alleged statements to Walker were based on personal knowledge or upon further layers of hearsay, rumor, and innuendo.

"The rules of evidence require [Walker] to present factual support that [the other source inspectors were] employee[s] of [DAC] and that the statement concerned a matter within [their] employment. He, however, has pointed to no evidence to create this necessary foundation." *Stagman v. Ryan,* 176 F.3d 986, 997 (7th Cir.), *cert. denied,* 528 U.S. 986, 120 S.Ct. 446, 145 L.Ed.2d 363 (1999) (affirming district court's conclusion that affidavit of defendant's employee as to what another of defendant's employees told him was inadmissible hearsay in the absence of evidence showing that latter individual was an employee and that his statement concerned subject within the scope of his employment); *see also DeMaria v. Washington County,* 12 F.Supp.2d 1093, 1100 (D.Idaho 1996) (rejecting plaintiffs' argument for application of Rule 801(d)(2)(D) where they failed to provide adequate foundation, by showing, inter alia, that declarants were employed by defendants when out-of-court statements were made); *cf. also Oreck Corp. v. Whirlpool Corp.,* 639 F.2d 75, 80–81 & n. 3 (2d Cir.1980).

believes Boeing management or human resources representatives assigned to him at the time of his termination. Walker Depo., v. II, 438:8–446:2. Walker also testified in his deposition that his previous manager, Dennis Jones, told him that Boeing employees gave Walker "a rating so low that that's why I can't get employed." Walker Depo., v. II, 440:1. In his opposition to Boeing's motion for summary judgment, Walker alleges: "The termination code was given to prospective employers for former employees per human resources, and under 10 means not rehirable, and future employers are told of the threshold." It is not clear from this whether Walker alleges that *his* termination code was given to prospective employers, but if this is his allegation, he has offered no evidence to support it.[11] Indeed, in his deposition Walker conceded that he has no idea whether Boeing ever communicated the allegedly low rating to any potential employer, and that he has no way of knowing what the rating means aside from an inference that it must be low because he was terminated for sexual harassment. Walker Depo., v. II, 438:8–446:2.

### e. Conspiracy

"Under California law, there is no separate and distinct tort cause of action for civil conspiracy." *Entertainment Research Group v. Genesis Creative Group,* 122 F.3d 1211, 1228 (9th Cir.1997) (citing *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.,* 7 Cal.4th 503, 28 Cal.Rptr.2d 475, 869 P.2d 454, 459 (1994)). Therefore, "regardless of whether [defendants] formed

such a conspiracy, in order for [Walker] to have a valid civil conspiracy cause of action, there must be another tort upon which [Walker] could base its conspiracy claim." *Id.* It is not sufficient "to simply have alleged underlying causes of action in [the plaintiff's] complaint," since there the plaintiff must first raise a genuine issue of material fact with respect to defendants' liability for these underlying causes of actions in order to sustain the conspiracy cause of action. *Id.* Because this Court grants summary judgment as to all of Walker's other tort causes of action, summary judgment is "appropriate for [Walker's] civil conspiracy claim since no underlying tort exists." *Id.*

### C. United Auto Workers

Walker asserts one claim against the UAW for breach of duty of fair representation. The UAW contends that this claim is barred by the applicable statute of limitations. Alternatively, the union contends that this claim fails on the merits.

### 1. Statute of Limitations

 When an employee sues both the employer for unfair labor practices, and the union for breach of the duty of fair representation, Section 10(b) of the National Labor Relations Act provides the applicable statute of limitations. *DelCostello v. Int'l Bhd. of Teamsters,* 462 U.S. 151, 169, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). This time period is six months. *Id.; see also Prazak v. Local 1 Int'l Union of Bricklayers & Allied Crafts,* 233 F.3d 1149, 1151 (9th Cir.2000). "A cause of ac-

---

11. Walker again cites the deposition testimony of Dennis Jones. For the reasons set forth in note 7, this is not evidence upon which this Court can rely. In any case, even if the unidentified document in Stevens's declara-

tion is the deposition of Dennis Jones, and even if it was properly authenticated, it does not establish that Walker's code was given to any prospective employer.

tion accrues when the plaintiff knew, or should have known, of the defendant's wrongdoing and can successfully maintain a suit in the district court." *Allen v. United Food and Commercial Workers Int'l Union,* 43 F.3d 424, 427 (9th Cir.1994).

Walker's fair representation claim is premised upon the UAW allowing DAC to improperly terminate his employment, allowing DAC and Boeing to circumvent proper grievance procedures, allowing DAC and Boeing to impugn his character and improperly and permanently interfere with his ability to secure other employment in the aerospace industry, and "reach[ing] a secret agreement or accommodation with Boeing ... and looked the other way when Boeing railroaded [him]." Pl.'s Compl. ¶ 58. He alleges that as a result of the UAW's breach of its duties, he suffered damages consisting of lost past and future earnings and benefits, other economic damages, and general and special damages for "extreme mental and emotional distress." *Id.* ¶ 59.

It is clear that Walker knew or should have known of the UAW's alleged wrongdoing as of May 1997. On May 19, 1997, the Chairperson of the Bargaining Committee for UAW Local 148, Charles Rosas, accepted Boeing's denial of Walker's grievance. Walker Depo., Exs. 19–21. Several days later, Walker learned of UAW's acceptance of Boeing's denial of his grievance. Walker Depo., v. I, 206:10–24 (Walker was told in late May by a UAW representative: "I mediated that grievance last week. You lost. I'm sorry. Good luck. Goodbye."). He was therefore fully aware of all of the UAW's alleged wrongs at this time.

Walker claims that the limitations period did not accrue in May 1997 because he still believed that he could resolve his claim through the intra-union appeals process. This is insufficient to defer accrual of the limitations period under Ninth Circuit law. In *Allen,* for example, the plaintiffs alleged that their union violated the duty of fair representation by conspiring with their employer to eliminate certain severance benefits during collective bargaining negotiations. *Allen,* 43 F.3d at 428. The plaintiffs argued that the statute of limitations should have been equitably tolled to account for the time in which the union could have ensured that the severance benefits were reinstated during statutorily-mandated negotiations regarding the effects on union members of the closure of the plant where the plaintiffs worked. *Id.* at 427–28. The court rejected this contention, reasoning that: "The possibility that subsequent events might influence the plaintiffs' ultimate recovery does not 'necessitate a rule postponing the accrual of duty of fair representation claims.' Plaintiffs could have timely filed suit and requested the district court stay proceedings until the effects bargaining concluded." *Id.* (quoting *Acri v. International Ass'n of Machinists,* 781 F.2d 1393, 1396–97 n. 1 (9th Cir.1986)). Walker's fair representation therefore accrued in May 1997, when he knew or should have known that he had suffered some certain damages as a result of UAW's "looking the other way" while DAC terminated him and Boeing refused to reinstate his employment.

Even if the statute of limitations did not accrue in May 1997, it accrued in April 1999, when Walker became aware of the refusal by Boeing to reopen the grievance pursuant to the CBA. Walker Depo., v. II, 269:17–272:22. In a letter to various UAW officials dated June 16, 1999, Walker wrote:

On March 31, 1999 representative of [UAW's] Aerospace Department and

Boeing met to discuss my case. The Aerospace Department was asked to wait a couple of weeks to straighten the matter out. After a couple of weeks they got back to us and said that they would do nothing, the matter was closed and would remain closed. After almost three years I am losing what patience that I have left. They have stated they will neither reinstate, compensate, or arbitrate this matter.

Stevens Decl., Ex. 25; *see also* Walker Depo., v.II 269:17–272:22. Thus, as of June 1999 *at the latest,* Walker was aware of the UAW's alleged wrongdoing because at that time he knew that Boeing considered the case to be closed and would grant him no relief. Walker's alleged damages had also been sufficiently certain for some time. Six months after the first week of April 1999 is the first week of October 1999. Six months from June 16, 1999 is December 16, 1999. Since this suit was brought on January 30, 2000, absent equitable tolling it is barred by the six-month statute of limitations.

■ Walker argues that the statute of limitations was equitably tolled while he pursued internal remedies and appeals. He again cites *Daviton.* However, the controlling statute of limitations applied in *Daviton* was borrowed from California law, so California's equitable tolling rules were applied. In the UAW's case, the statute of limitations is borrowed from federal law, so federal equitable tolling rules apply. Therefore, *Daviton* provides no basis on which to find that the statute of limitations on Walker's claim against UAW was equitably tolled while he pursued intra-union remedies. *See Abreu v. Svenhard's Swedish Bakery,* 208 Cal.App.3d 1446, 1456, 257 Cal.Rptr. 26, 31 (1989) ("Equitable tolling should not be applied in

a manner that frustrates national labor-management policy. To apply state tolling statutes in this case would inevitably frustrate the *DelCostello* court's intent to have a uniform federal statute of limitations period for all section 301 actions.") (citations and internal quotations omitted).

Even under the applicable tolling standard, however, Walker's argument fails. The statute of limitations has been tolled in hybrid cases only in situations where the plaintiff is required to pursue another course of action before filing suit. *Conley v. Int'l Bhd. of Elec. Workers,* 810 F.2d 913, 915 (9th Cir.1987). To allow tolling when the plaintiff's out-of-court actions were merely optional "would frustrate the national policy of prompt resolution of labor disputes." *Id.* at 916. Neither party cites any authority as to when exhaustion is required under these circumstances, but, in any event, Walker has provided no evidence that he was required to pursue any internal appeals after he had learned in April 1999 that Boeing would not agree to reactivate his grievance and had written to UAW in June 1999 stating that Boeing considered his case closed and would take no further action. In other words, there is no evidence in the record that Walker's decision to write to the International President of UAW on June 16, 1999 and July 1, 1999 asking that UAW petition to compel arbitration on his behalf was required by the constitution of the UAW. *See* Walker Depo.Exs. 29, 30. Instead, Walker had learned about petitioning to compel arbitration through calling the American Arbitration Association. *See id.* at 274–75. Because it was Walker's own research, rather than any requirement, which prompted him to write his letters on arbitration, the statute of limitations should not be tolled to account for Walker's request that UAW petition to compel arbi-

tration. In addition, there is no evidence that UAW's decision to further research the possibility of joining with Walker in a lawsuit against Boeing was required by the UAW Constitution. Therefore, because there is no proof that either Walker's actions or the UAW's actions after the events of April and June 1999 were required, the statute of limitations should not be tolled beyond that point.

### 2. Merits

Even if Walker's claim against the UAW is not barred by the statute of limitations, it fails on the merits. A union breaches its duty of fair representation if its actions are either "arbitrary, discriminatory, or in bad faith." *Air Line Pilots Ass'n, Intern. v. O'Neill,* 499 U.S. 65, 67, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991) (citing *Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967)). Walker has provided no evidence that the UAW representation was arbitrary, discriminatory or in bad faith. Walker obviously disagreed with the decision of the Union to pursue mediation and to drop his grievance upon the outcome of that mediation. But these were tactical decisions by the Union and he offers nothing to suggest otherwise. The essence of Walker's complaint appears to be that the UAW gave him bad advice about the need to purse internal remedies, and that this bad advice adversely affected the viability of his grievance. Even if this was true—and it is not at all clear that it is—Walker must identify some element of discrimination or bad faith and he has pointed to none.[12]

## V. CONCLUSION

For the reasons set forth herein, defendant Neill Aircraft's motion for summary judgment is GRANTED, defendant Boeing Corporation's motion for summary judgment is GRANTED, and defendant UAW's motion for summary judgment is GRANTED.

IT IS SO ORDERED.

---

12. In his supplemental opposition, Walker offers Forte's deposition testimony to show that the union told Walker that he must pursue union remedies before filing a complaint with the NLRB or filing a lawsuit. This does in fact appear to be bad advice. But there is nothing in this testimony that suggests it was arbitrary, in bad faith or offered with any discriminatory purpose. Moreover, it is offset by other portions of Forte's deposition wherein he says he clearly told Walker that the Union could not force Boeing to reinstate the grievance. It should also be noted that at the same time Forte was "advising" Walker, Walker was being represented by counsel.